# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**DODD BLANDON,** Individually and on behalf of all others similarly situated,

Plaintiff,

v.

**WASTE PRO USA, INC.,**

Defendant.

CASE NO. _____

**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

**JURY TRIAL DEMANDED**

## ORIGINAL COLLECTIVE ACTION COMPLAINT

Plaintiff—Dodd Blandon, individually and on behalf of all other similarly situated individuals (collectively, "Plaintiffs")—by and through undersigned counsel, sues the Defendant Waste Pro USA, Inc. ("Waste Pro USA") on a collective basis pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

## INTRODUCTION

1.      The FLSA is designed to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers." 29 U.S.C. § 202(a). To achieve its purposes, the FLSA requires three things. First, the FLSA requires payment of minimum wages. 29 U.S.C. § 206(a). Second, the FLSA requires overtime pay for covered employers whose employees work in excess of 40 hours per workweek. 29 U.S.C. 207(a). And third, the FLSA establishes minimum recordkeeping requirements for covered employers. 29 U.S.C. § 211(a); 29 U.S.C § 516.2(a)(7).

2.      Plaintiff and other current and former similarly situated employees are Waste Disposal Drivers for the Defendant who were paid on a purported job/day rate for work performed. Due to Defendant's company-wide policies and procedures, Plaintiffs were deprived of

wages for hours actually worked. Specifically, Defendant did not pay a true day rate for any and all hours worked in a given day, but placed limitations on the number of hours worked before the "day rate" was paid. Further, Defendant also coupled the day rate with "other forms of compensation." Therefore, Defendant violated the FLSA in both the calculation of the prevailing hour rate and only paying Plaintiffs "half-time" for all hours worked over forty (40) in a given workweek.

3.     Additionally, Plaintiff, and others who were similarly situated, were deprived of wages for hours actually worked by the Defendant's policy to encourage and require them to perform pre-shift and post-shift duties while not clocked in. Defendant also automatically deducted thirty (30) minutes for lunch breaks that Defendant knew Plaintiff, and others similarly situated, regularly worked through.

4.     Three other Waste Disposal Drivers originally filed a Class / Collective Action Complaint in the District of South Carolina to vindicate their FLSA rights against Defendant and other Waste Pro entities on October 2, 2017 and later amended on October 31, 2017 and December 5, 2017. *Anthony Wright, Daniel Hansen, and Kenneth Privette v. Waste Pro USA, Inc., Waste Pro of Florida, Inc., Waste Pro of South Carolina, Inc., and Waste Pro of North Carolina, Inc.*, Case No. 2:17-cv-2654-DCN (United States District Court, District of South Carolina, D.E. 1, 5 and 30-2) (the "South Carolina Action").

5.     Plaintiff Blandon originally filed his consent to join the South Carolina Action on February 2, 2018.

6.     Numerous other drivers from multiple states also filed consents to join the South Carolina Action over the last two years.

7.     At the time these drivers from multiple states filed their consents in the South Carolina Action, Defendant here was a party-defendant in the South Carolina Action.

8.      Pursuant to the FLSA, Plaintiff and those drivers who filed consents in the South Carolina Action at that time commenced their FLSA action against Defendant the day their consent was filed in the South Carolina Action. *See* 29 U.S.C. § 256.

9.      As a result, the FLSA claims of Plaintiff and those opt-in plaintiffs who originally joined the South Carolina Action against Defendant were tolled when they joined the South Carolina action per the FLSA.

10.     On July 25, 2019, after significant motion practice between the parties in the South Carolina Action, the District of South Carolina dismissed Waste Pro USA and Waste Pro of Florida, Inc., as well as the driver plaintiffs who worked outside of South Carolina and North Carolina, for lack of personal jurisdiction. Blandon and those opt-in plaintiffs who originally joined the South Carolina Action against Defendant now file and join this subsequent, continuing action to pursue their FLSA rights against Waste Pro USA.

11.     Plaintiff, Dodd Blandon, now brings this action individually and on behalf of all other similarly situated current and former non-exempt Waste Disposal Drivers who were paid a day rate and who have been employed by Waste Pro USA ("Plaintiffs" or "Putative Class Members") in any state except for Florida[1], at any time from December 6, 2016 (or from three years before a Putative Class Member filed a consent to join in the South Carolina Action) through the final disposition of this matter, and have timely filed consent forms to join this collective action or the South Carolina Action. These class members should be informed of the pendency of this action and apprised of their rights.

---

[1] Anthony Wright, who was a plaintiff in the original South Carolina Action, has filed a subsequent, continuing action against Waste Pro USA and Waste Pro Florida, Inc., in the Southern District of Florida on behalf of Florida drivers. *Wright v. Waste Pro USA, Inc., and Waste Pro of Florida, Inc.*, Case No. 2019-cv-62051-KMM (United States District Court, Southern District of Florida). Thus, Plaintiff has excluded Florida drivers from this collective action and intends to only include drivers outside the states of Florida, South Carolina and North Carolina against Defendant.

## THE PARTIES

12.     Plaintiff Blandon is an individual residing in Brookhaven, Mississippi and worked at Waste Pro USA's facility in Brookhaven, Mississippi within the relevant three-year period. Plaintiff Blandon's written consent to be a plaintiff in this action to continue his case against Waste Pro USA, as well as his previous consent to join the original South Carolina Action, are attached hereto as Exhibit "A."

13.     The Putative Class Members include all of Waste Pro USA's non-exempt Waste Disposal Drivers throughout the country (except Florida, South Carolina, and North Carolina) who performed the same or similar work as Plaintiff Blandon, and were subjected to the same or similar payment policies as Plaintiff.

14.     Defendant Waste Pro USA, Inc. ("Waste Pro USA") is a Florida Corporation. Defendant Waste Pro USA is a covered employer under the FLSA and acted as such in relation to Plaintiff and the Putative Class Members.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over the FLSA claim pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201-219.

16.     This Court has general and specific personal jurisdiction over Waste Pro because the cause of action arose within this District as a result of Waste Pro USA's conduct within this District; because Florida qualifies as Waste Pro USA's home state for purposes of general personal jurisdiction; and because Waste Pro USA is headquartered in Florida and organized under Florida law.

17.     Venue is proper in this District because Waste Pro USA is headquartered within this District.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## FLSA COVERAGE

19.     Defendant Waste Pro USA is the parent corporation of several Waste Pro subsidiaries, and together they constitute and operate one of the largest, privately held, waste disposal companies in the Southeastern United States.

20.     At all material times, Defendant has been an employer within the meaning of section 203(d) of the FLSA, which is defined to include any person acting directly or indirectly in the interest of an employer in relation to an employee. 29 U.S.C. § 203(d).

21.     At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of section 203(s)(l) of the FLSA because Defendant has had and continues to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

22.     "To be 'employed' includes when an employer 'suffer[s] or permit[s] [the employee] to work.'" *See Freeman v. Key Largo Volunteer Fire & Rescue Dept., Inc.,* 494 Fed. Appx. 940, 942 (11th Cir. 2012), *cert. denied*, 134 S.Ct. 62 (U.S. 2013).

23.     Plaintiff and the proposed class members were employed by Defendant.

24.     At all material times, Plaintiffs are (or were) employees who engaged in commerce or in the production of goods for commerce as required by sections 206 and 207 of the FLSA. 29 U.S.C. §§ 206–07.

25.     At all material times, Defendant has had, and continues to have, an annual gross business volume in excess of the statutory standard of $500,000.00.

26.     During Plaintiffs' employment, Defendant employed at least two employees who handled goods, materials and supplies which travelled in interstate commerce to reach Plaintiffs for their use in Plaintiffs' employment with Defendant, such as the waste disposal trucks and other items used to run the business.

27.     Therefore, at all material times relevant to this action, Defendant is an enterprise covered by the FLSA, and as defined by 29 U.S.C. §§ 203(r) and 203(s).

## WAGE VIOLATIONS

28.     Waste Pro USA violated and continues to violate the FLSA by failing to pay Plaintiff and the Putative Class Members time and one-half for each hour worked in excess of 40 hours per workweek.

29.     Further, Waste Pro USA has improperly calculated Plaintiff and the Putative Class Members' regular rate resulting in further miscalculation of Plaintiff and the Putative Class Members' overtime pay. Specifically, Plaintiff and the Putative Class Members should have received overtime compensation at a rate not less than one and one-half times their true regular rate.

30.     Plaintiff and the Putative Class Members were (and continue to be) paid under a purported day rate plan—that is, they were supposed to be paid for each day worked regardless of the number of hours worked each day. *See* 29 C.F.R. § 778.112.

31.     Waste Pro USA violated the day rate regulation in a number of different ways. Specifically, Plaintiff and the Putative Class Members were compensated by Waste Pro USA with a purported day rate as well as other forms of compensation. These other forms of compensation are not in compliance with the day rate provision of 29 C.F.R. § 778.112 and ultimately result in a miscalculation of Plaintiff and the Putative Class Members' regular rate and resulting overtime compensation. These other forms of compensation (helper pay and safety bonuses) may vary by name and amount, but nevertheless have the same overall effect of invalidating Waste Pro USA's attempt to categorize and compensate Plaintiff and the Putative Class Members under the day rate provision permitted by 29 C.F.R. § 778.112.

32.     Additionally, Plaintiff and the Putative Class Members did not receive their full day rate if they did not work a full day. This is a blatant violation of the day rate provision of 29 C.F.R. §

778.112. Indeed, a day rate plan can only be valid if an employee is paid a flat sum for a day's work *without regard to the number of hours worked in the day*. 29 C.F.R. § 778.112 (emphasis added). Because Plaintiff and the Putative Class Members are not paid a flat sum for a day's work without regard to the number of hours worked in the day, they are not paid under a true "day rate" plan and Waste Pro USA cannot avail itself of such a pay system.

33.     Waste Pro USA also violated and continues to violate the FLSA by permitting and encouraging Plaintiff and the Putative Class Members to perform pre-trip and post-trip work duties off the clock—that is, work without pay.

34.     And lastly, Waste Pro USA violated and continues to violate the FLSA by deducting 30-minute meal periods from Plaintiff and the Putative Class Members' daily hours worked, despite knowing that Plaintiff and the Putative Class Members routinely worked throughout their designated 30-minute meal periods.

35.     At all times relevant to this action, Defendant failed to comply with the FLSA because Plaintiff and the Putative Class Members performed services for Defendant for which no provisions were made by Defendant to properly pay Plaintiff, and those similarly situated, for all hours worked or at the correct prevailing rate.

## COLLECTIVE ACTION ALLEGATIONS

36.     Plaintiff brings this action as a collective action on behalf of a class of individuals similarly situated. Specifically, Plaintiff brings these claims under the Fair Labor Standards Act as a collective action and will request the Court to grant conditional certification under 29 U.S.C. § 216(b), and to order notices to potential opt-in individuals who are or were employed by Defendant as Waste Disposal Drivers within three (3) years prior to the commencement of this lawsuit in any state except for Florida, North Carolina or South Carolina (the "FLSA Class").

37.     Potential opt-in members of the collective action are similarly situated to Plaintiff. They all held the same job positions and had substantially similar job requirements and pay provisions. They are or were subject to the same common practices, policies, and plans of Defendant. They all suffered damages in the nature of lost overtime and other wages resulting from Defendant's wrongful conduct.

## STATEMENT OF FACTS

**A.      Waste Pro USA Jointly Employs Their Drivers With Local Entities**

38.     Waste Pro USA provides waste disposal and recycling services to residential and commercial clients throughout the South Eastern United States. *See* www.wasteprousa.com.

39.     Waste disposal drivers, such as Plaintiff and Opt-in Plaintiffs, perform this actual service to customers and are integral to Waste Pro USA's business and operation.

40.     Upon information and belief, Defendant operates the Waste Pro business out of its common headquarters in Longwood, Florida.

41.     Defendant Waste Pro USA purports to be a mere holding company for other Waste Pro entities.

42.     Upon information and belief, Defendant utilizes different named entities in different states to operate their Waste Pro locations and services.

43.     However, these entities are operated out of Waste Pro's headquarters in Longwood, Florida and have common officers. *See* Composite Exhibit "B" attached hereto of various corporate filings for Waste Pro entities.

44.     Indeed, on the Waste Pro USA website which advertises and acknowledges Waste Pro's collective services across all of its entities, Waste Pro currently operates from more than 75 locations in Alabama, Arkansas, Florida, Georgia, Louisiana, Mississippi, Tennessee, and North and South Carolina. *See* www.wasteprousa.com/the-waste-pro-way/.

45.     Waste Pro USA's website does not differentiate between different Waste Pro entities, but promotes Waste Pro's services as one common business purpose across the states it services.

46.     Waste Pro USA's website lists each of its locations it operates in multiple different states and does not differentiate between which entity operates that location. *See* www.wasteprousa.com/find-your-city/.

47.     Even when clicking on an individual location, at the bottom of the webpage Waste Pro USA's website references its corporate headquarters in Longwood, Florida. *See*, *e.g.*, www.wasteprousa.com/office/beaufort/.

48.     Upon information and belief, Waste Pro USA's business is a centralized, top-down operation controlled by Defendant.

49.     Upon information and belief, there is common ownership between Waste Pro entities.

50.     Waste Pro USA's website states that John Jennings is the "founder and visionary" behind Waste Pro and again touts its operations in nine different states. *See* www.wasteprousa.com/leadership/.

51.     Here, Waste Pro USA will likely deny that it is an FLSA employer, yet the factors to determine joint employment under the FLSA militate to ruling that Waste Pro USA is an employer under the FLSA with respect to Plaintiffs.

52.     Upon information and belief, Defendant jointly determines, shares or allocates responsibility for payroll matters with its local entities.

53.     In fact, corporate human resources employees are employed by Waste Pro USA, such as Shannon Early the Director of Human Resources for "Waste Pro" on the Waste Pro USA website. *See* Exhibit C (https://www.wasteprousa.com/leadership/shannon-early/), and Exhibit D

(Shannon Early LinkedIn Profile describing her as Waste Pro USA employee.[2]

54.     Also, the handbooks utilized for drivers are "Waste Pro USA" handbooks. *See* Exhibits F and G (2017 and 2008 handbooks which only name Waste Pro USA as an entity and then collectively use the term "Waste Pro").

55.     In fact, the 2008 handbook, which many drivers signed acknowledgments for, proudly proclaims "Welcome to Waste Pro USA!"  *See* Ex. F at pg. 5 of handbook, and *see* Exhibit H (signed handbook authorization by a driver and "At-Will Employment Disclaimer" for Waste Pro USA).

56.     The handbooks describe the terms and conditions of employment and the control Waste Pro USA has over Plaintiffs and other Waste Disposal Drivers here.

57.     As a result of these handbooks alone, Waste Pro USA has the authority to discipline, hire, fire, give raises to, or instruct Waste Disposal Drivers.

58.     As one example of this, Waste Pro USA officers approved a driver's promotion and pay raise to a supervisor. *See* email chain at Exhibit I.

59.     Thus, this approval of an employee to a supervisor position shows Waste Pro USA helped decide the management structure of Waste Disposal Drivers.

60.     Waste Pro USA also employs Regional Vice-Presidents who oversee and supervise different regions and the operations and drivers which work in those regions. *See, e.g.,* Waste Pro USA's website at https://www.wasteprousa.com/leadership/ (describing Regional Vice-Presidents' regions and supervision and control of those divisions).

61.     Payroll and other pay related matters for Waste Disposal Drivers are handled by the Waste Pro USA payroll department and Waste Pro USA employees in Longwood. *See* Waste Pro

---

[2] Ms. Early *also* identified herself as a Waste Pro Florida employee in a federal court filing approximately three years ago. *See Morrow v. Waste Pro of Fla., Inc.,* No. 0:15-cv-61247 (S.D. Fla.) ECF No. 24-5, 10, ¶ 10, Ex. A (attached hereto as Ex. E).

USA Authorization Agreement for Direct Deposit signed by a driver, attached as Exhibit J.

62.     Here, Waste Pro USA employees (such as Waste Pro USA Benefits Director Judi Craigo and Waste Pro USA's Regional HR Rep Tia Epps) were even involved in creating and describing Waste Pro's illegal day rate plan which required waste disposal drivers to work a certain number of days to receive the purported day rate. *See* email chain attached as Exhibit K.

63.     Defendant jointly determines, shares or allocates responsibility for payroll tax matters with its local entities.

64.     Defendant jointly determines, shares or allocates responsibility for human resources matters, including but not limited to the hiring and firing of employees, with its local entities.

65.     In fact, when local drivers are hired to work as Waste Disposal Drivers, they would complete Waste Pro USA applications to apply for employment as well as various other forms through Waste Pro USA. *See* Exhibit L (Application and related documents relating to a Florida driver named Anathy Adams).

66.     As another example, Waste Pro USA utilized one law firm to audit its payroll practices for Waste Pro collectively. *See* Audit attached as Exhibit M produced in another FLSA matter where Waste Pro was a defendant.

67.     As a third example, Waste Pro advertises its job openings in multiple states through Waste Pro USA. *See* https://recruiting.adp.com/srccar/public/RTI.home?c=1080941&d=External-WastePro (last visited November 19, 2019).

68.     Upon information and belief, Defendant jointly determines, shares or allocates responsibility for marketing/advertising matters with its local entities.

69.     Upon information and belief, Defendant jointly determines, shares, directs or allocates employees between its local entities.

70.     For example, Russell Mackie, whom Waste Pro previously submitted an affidavit

from in the predecessor South Carolina Action, declared himself to be an employee of Waste Pro of Florida, Inc. (*see* Exhibit N attached hereto), while being listed on Waste Pro USA's website as part of their leadership team. *See* www.wasteprousa.com/leadership/.

71.     Waste Pro USA's Director of Human Resources Shannon Early also identifies herself as both a Waste Pro USA and Waste Pro Florida employee. *See* ¶ 53, fn. 2; and Exhibits C and D.

72.     Waste Pro USA and its local entities share a completely integrated computer network system, payroll system, corporate logo and website.

73.     Waste Pro USA monitored the amount of overtime worked by Plaintiff and Putative Class Members through reports logging drivers who worked 70 or more hours in a given workweek and distributing those to regional managers and others. *See* Exhibit O.

74.     According to the Federal Motor Carrier Safety Administration, Waste Pro USA owns one hundred and twenty-eight (128) power units and employs one hundred fourteen (114) drivers who drove 3,872,153 miles in 2018. *See* Company Snapshot from FMCSA website, attached as Exhibit P.

75.     Waste Pro USA also purchases land at times in furtherance of the Waste Pro business. *See, e.g.,* Special Warranty Deed attached here to as Exhibit Q.

76.     Waste Pro USA is also the named insured on insurance policies, including worker's compensation policies, which as an example of one, covers Florida Waste Disposal Drivers. *See* Exhibit R.

77.     Waste Pro USA is also the named insured on certain commercial general liability policies, including policies which cover one or more of the locations at issue here.

78.     Some municipalities, including the City of Miramar, Florida, require Waste Pro USA to guaranty all of its subsidiary's, Waste Pro of Florida's, obligations under the contract with that

city. *See* Exhibit S.

79.     It is clear that Waste Pro USA operates its locations in different states as one common business enterprise with a common business purpose of providing waste disposal and recycling services to its clients in these different states.

80.     Further, the Middle District of Florida ordered that notice issue and certified a nationwide collective action against Waste Pro USA and Waste Pro Florida involving helpers, based on the same or similar allegations of joint employer contained herein. *See Thomas v. Waste Pro USA, Inc.*, No. 8:17-cv-02254, ECF No. 224 at 22-23 (M.D. Fla. Mar. 12, 2019) ("Plaintiff has supplied evidence that subsidiaries of Waste Pro USA have access to the same policy and procedure documents, there are resources available from Waste Pro USA for its subsidiaries, the companies have the same CEO, and Regional Vice Presidents attend meetings together. Plaintiff has supplied sufficient evidence for the conditional certification stage . . . ."). That court subsequently denied Waste Pro USA's motion for summary judgment that it was not a joint employer of Waste Pro Florida's employees. *Id.*, ECF No. 331 at 24-30 (M.D. Fla. Sep. 30, 2019) (finding evidence supported that Waste Pro USA had the right to hire, fire, or discipline Waste Pro Florida's employees; that Waste Pro USA is involved in preparation of payroll and payment of wages to Waste Pro Florida's employees; that Waste Pro Florida employees performed work integral to Waste Pro USA's business as a waste removal company; and that investment in the equipment or facilities used by Waste Pro Florida's employees is made by Waste Pro USA). Plaintiff here makes the same allegations in support of Waste Pro USA's status as a joint employer of Plaintiff and the Putative Class Members.

81.     On information and belief, Waste Pro USA and its subsidiaries acted in all respects material to this action as the agent of the other, carried out a joint scheme, business plan or policy in

material respects hereto, and the acts of Waste Pro USA constitute it being a joint employer under the FLSA.

82.     The unlawful acts alleged in this Complaint were committed by Defendant and/or Defendant's officers, agents, employees, or representatives, while actively engaged in the management of Defendant's business or affairs and with the authorization of Defendant.

83.     Defendant agreed to allocate responsibility for, or otherwise codetermined key terms and conditions of the Plaintiff's and Putative Class Members' work and jointly administered training, job duties, and job assignments. The combined influence over the terms and conditions of the Plaintiff's and the Putative Class Members' employment renders the Plaintiff and Putative Class Members employees of Defendant.

84.     Defendant directly or indirectly acted in the interest of an employer toward Plaintiff and other similarly situated employees, including without limitation directly or indirectly controlling the terms and conditions of employment and compensation of Plaintiff and others similarly situated.

85.     Defendant was a joint employer of Plaintiff and other similarly situated drivers in their respective territory or territories with the local entities because each, respective parent, division, subsidiary or affiliate acted directly or indirectly in the interest of the other in relation to Plaintiff and such similarly situated persons.

86.     Defendant was a joint employer of the Plaintiff and the similarly situated driver employees in their respective territories because they commonly controlled the terms of compensation and conditions of employment of Plaintiff and others similarly situated, and are not completely disassociated with respect to the terms of compensation and conditions of employment of Plaintiff and others similarly situated.

87.     Defendant directly or indirectly acted in the interest of an employer toward Plaintiff and other similarly situated employees at their locations at all material times, including without

limitation directly or indirectly controlling the terms and conditions of employment and compensation of Plaintiff and other workers similarly situated.

88.     As such, Plaintiff and the Putative Class Members in this action were employed by Waste Pro USA under the FLSA.

**B.     Plaintiff and the Putative Class Members are (or were) Waste Disposal Drivers for Waste Pro**

89.     Defendant's Waste Disposal Drivers, including Plaintiff and the Putative Class Members, all drove assigned intrastate routes to collect and dispose of residential or commercial waste and/or recyclable materials for Defendant's customers in multiple states (except Florida, South Carolina and North Carolina).

90.     Defendant's Waste Disposal Drivers are all non-exempt employees under the FLSA.

91.     Plaintiff Blandon was employed as a non-exempt Waste Disposal Driver at Waste Pro's facility in Brookhaven, Mississippi from approximately September 24, 2012 through March 11, 2017.

92.     Plaintiff Blandon was compensated on a job/day rate determined by the number of hours worked in a day.

93.     Plaintiff Blandon did not receive the proper amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.

94.     The Putative Class Members are (or were) non-exempt Waste Disposal Drivers for Defendant in all states except Florida, South Carolina and North Carolina for the 3-year period preceding the filing of this complaint through the final disposition of this matter, except those who previously joined the South Carolina action at an earlier time.

95.     None of the FLSA exemptions relieving a covered employer of the statutory duty to pay employees overtime at one and one-half times the regular rate of pay apply to Defendant, Plaintiff, or the Putative Class Members.

96.     Plaintiff and the Putative Class Members are similarly situated with respect to their job duties, their pay structure and, as set forth below, the policies of Defendant resulting in FLSA violations.

**C.     Defendant did not (and does not) pay Plaintiff and the Putative Class Members overtime in accordance with the FLSA.**

97.     Plaintiff and the Putative Class Members were (and are) required to work overtime hours when requested by Defendant, and were (and are) subject to potential disciplinary action for refusing to work overtime.

98.     Plaintiff and the Putative Class Members regularly worked (or work) over forty (40) hours in a workweek as Waste Disposal Drivers.

99.     Defendant compensated Plaintiff and Putative Class Members on a purported job/day rate, in addition to other forms of compensation. These other forms of compensation are not in compliance with the day and job rate provisions of 29 C.F.R. § 778.112 and, ultimately, result in a miscalculation of Plaintiff and the Putative Class Members' regular rate and resulting overtime compensation. These other forms of compensation (help pay, bonus pay, and safety bonus) may vary by name and amounts, but nevertheless have the same overall effect in invalidating Defendant's attempt to categorize and compensate Plaintiff and the Putative Class Members under the pay provision permitted by 29 C.F.R. § 778.112.

100.    Additionally, Defendant would only pay a "day rate" to Plaintiff and the Putative Class Members if they worked a preset number of hours per day. If the designated number of hours were not worked by Plaintiff or the Putative Class Members, then they did not receive the full "day rate." This is a blatant violation of the day rate provision of 29 C.F.R. § 778.112.

101.    Indeed, a day rate plan can only be valid if an employee is paid a flat sum for a day's work *without regard to the number of hours worked in the day*. 29 C.F.R. § 778.112 (emphasis added). Because Plaintiff and the Putative Class Members are not paid a flat sum for a day's work

without regard to the number of hours worked in the day, they are not paid under a true "day rate" plan, and Waste Pro USA cannot avail itself of such a pay system.

102. Defendant's calculation of Plaintiff and the Putative Class Members' regular rate of pay does not comply with the FLSA.

103. Defendant paid Plaintiff and the Putative Class Members one-half of the regular rate of each hour worked over 40 hours in a workweek.

104. Defendant paid Plaintiff and the Putative Class Members a purported day rate, plus other forms of compensation for services.

105. In addition to the purported day rate that Defendant paid Plaintiff and the Putative Class Members, Defendant compensated Plaintiff and the Putative Class Members for the same type of work that they normally performed on an hourly basis. For example, if Plaintiff and the Putative Class Members completed their assigned routes for the day, they would be asked to help other drivers with their incomplete routes. Generally, when Defendant paid Plaintiff and the Putative Class Members on an hourly basis, as opposed to a daily basis, they referred to these hourly payments as "help pay."

106. Defendant also compensated Plaintiff and the Putative Class Members on a basis other than the daily rate basis for what Defendant categorized as "bonus pay", "incentive pay", "extra pay" and "miscellaneous pay."

107. In the event that Plaintiff and the Putative Class Members finished their route for the day early or needed to work for only half of the day, Defendant, at least sometimes, did not pay them the day rate, but rather compensated them on an hourly basis and in a lesser amount than the day rate.

108. Defendant also compensated Plaintiff and the Putative Class Members with a form of incentive pay for completing a certain amount of time without any accidents. Defendant paid a

non-discretionary safety bonus that would be paid to the Plaintiff and the Putative Class Members on a weekly basis.

109.    Plaintiff and the Putative Class Members were hired to work a regular workweek consisting of forty (40) hours per workweek, and it was the Plaintiffs' understanding that their wages would compensate them for forty (40) hours. Further, the day rates were based upon an eight (8) hour day and approximated the hourly rates that prevailed in the market for the type of work performed by Plaintiff and the Putative Class Members.

110.    Plaintiff and the Putative Class Members regularly worked over forty (40) hours in a workweek as Waste Disposal Drivers.

111.    The FLSA requires non-exempt employees, like Plaintiff and the Putative Class Members, to be compensated for overtime work at the mandated overtime pay rate.

112.    Plaintiff and the Putative Class Members were entitled to receive time and one-half compensation for all hours worked over forty (40) hours in a workweek.

113.    The payment scheme used by Defendant to pay Plaintiff and the Putative Class Members did not comply with the FLSA.

114.    Defendant violated and continues to violate the FLSA by failing to pay its Waste Disposal Drivers, including Plaintiff and the Putative Class Members, time and one-half for each hour worked in excess of forty (40) hours per workweek.

115.    As Defendant's employees, Plaintiff and the Putative Class Members were subjected to the same or a substantially similar payment scheme, as described above.

116.    On several occasions, Plaintiffs complained to management that their overtime was not being calculated correctly and pleaded with them to correct it.

117.    In response to Plaintiffs' complaints, Waste Pro management told Plaintiffs that they were paid "Chinese overtime," that paying only "Chinese overtime" was Waste Pro's corporate-wide

policy, and that the company would not pay them overtime at the regular rate of one and one half times their pay.

118.    Plaintiffs were required to perform necessary and integral work for Defendant while not clocked in, or otherwise off the clock.

119.    The off the clock work usually occurred prior to the Plaintiffs daily driving routes and after the routes or any helper routes were completed at the end of the day.

120.    Further, Plaintiff and the putative class members were subjected to automatic deductions for 30-minute meal period, despite Waste Pro's knowledge that Plaintiff and the Putative Class Members routinely worked through their designated thirty (30) minute meal periods.

121.    Defendant was and remains aware that Plaintiff and the Putative Class Members regularly worked through their 30-minute meal periods.

122.    Defendant's systematic deduction of the thirty (30) minute meal period from hours worked in excess of forty (40) hours per workweek deprived Plaintiff and the Putative Class Members of overtime pay in violation of the FLSA.

123.    Plaintiff and the Putative Class Members were subjected to the same or a substantially similar policy, practice, or scheme of having the 30-minute meal period deducted from their on-the clock time, as described above.

## COUNT I – RECOVERY OF OVERTIME COMPENSATION (29 U.S.C. § 207)

124.    Plaintiff and the Putative Class Members incorporate by reference paragraphs 1-123 as though fully and completely set forth herein.

125.    Defendant's practice of failing to pay Plaintiff and the Putative Class Members time-and-a-half rate for hours in excess of forty (40) per workweek violates the FLSA. 29 U.S.C. § 207.

126.    None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are employed are applicable to Defendant or Plaintiffs.

127.    Defendant failed to keep adequate records of the Plaintiff's and Class Member's work hours and pay in violation of section 211(c) of the FLSA. 29 U.S.C. § 211(c).

128.    Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a.    The time of day and day of week on which the employees' work week begins;

b.    The regular hourly rate or pay for any workweek in which overtime compensation is due under Section 7(a) of the FLSA;

c.    An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d.    The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e.    The hours worked each workday and total hours worked each workweek;

f.    The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive or premium overtime compensation;

g.    The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

h.    The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

i.    The dates, amounts, and nature of the items which make up the total additions and deductions;

j.    The total wages paid each pay period; and

k.      The date of payment and the pay period covered by payment.

29  C.F.R. §§ 516.2, 516.5.

129.    Defendant has not complied with the federal law and has failed to maintain such records with respect to Plaintiff and the Putative Class Members. Because Defendant's records are inaccurate and/or inadequate, Plaintiff and the Putative Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference." *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

130.    Defendant's failure to properly compensate employees at a rate of at least one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek, results from Defendant's purported day rate payment policy or practice that applies to all similarly-situated employees, nationwide.

131.    Defendant knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay overtime compensation correctly with respect to Plaintiff and the Putative Class Members.

132.    Specifically, despite the fact that numerous Waste Disposal Drivers brought Defendant's aforementioned illegal policies and FLSA violations to Defendant's attention throughout their employment, Defendant refused to pay Plaintiff and the Putative Class Members their proper compensation as required by the FLSA.

133.    Defendant did not act in good faith or in reliance upon any of the following in formulating their pay practices: (a) case law, (b) the FLSA, 29 U.S.C. §§ 201-219, (c) Department of Labor Wage & Hour Opinion Letters or (d) the Code of Federal Regulations.

134.    Accordingly, Plaintiff and the Putative Class Members bring this cause of action under section 216(b) of the FLSA, which allows them to recover all unpaid overtime compensation to which they are entitled, but have not been paid, for the 3-year period preceding the filing of this complaint through the final disposition of this matter. 29 U.S.C. § 216(b).[3]

135.    Plaintiff and the Putative Class Members contend that Defendant's conduct in violating the FLSA is willful. Accordingly, Plaintiff and the Putative Class Members seek recovery of all unpaid overtime compensation to which they are entitled, but have not been paid, for the three years preceding the filing of this complaint through the final disposition of this matter. 29 U.S.C. § 216(b).

136.    Due to the willful nature of Defendant's conduct, Plaintiff and the Putative Class Members seek to recover, as liquidated damages, an amount equal to unpaid overtime wages for the 3-year period preceding the filing of this complaint through the final disposition of this matter—that is, the same period for which unpaid overtime damages are sought. 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

Plaintiff, individually, and on behalf of all other similarly situated persons, respectfully requests that this Court enter judgment against the Defendant:

a.    For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA and requiring Defendant to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all Putative Class Members;

b.    For an Order approving the form and content of a notice to be sent to all potential collective action members advising them of the pendency of this litigation and of

---

[3] As alleged above, the FLSA claims of Plaintiff and those opt-in plaintiffs who originally joined the South Carolina Action against Defendant were tolled when they joined the South Carolina action per the FLSA; thus, their claims reach back to three years before that time.

their rights with respect thereto;

c.      For an Order equitably tolling the claims of those Putative Class Members, including Plaintiff, who previously filed a consent to join form in the South Carolina Action.

d.      For a declaratory judgment that Defendant has willfully and in bad faith violated the overtime wage provisions of the FLSA, and have deprived Plaintiff and the Putative Class Members of their rights to such compensation;

e.      For an Order requiring Defendant to provide a complete and accurate accounting of all overtime wages to which Plaintiff and all Putative Class Members;

f.      For an Order awarding Plaintiff (and those who have joined in the suit) back wages that have been improperly withheld;

g.      For an Order pursuant to Section 16(b) of the FLSA finding Defendant liable for unpaid back wages due to Plaintiff (and those who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those who have joined in the suit);

h.      For an Order awarding Plaintiff (and those who have joined in the suit) the costs of this action;

i.      For an Order awarding Plaintiff (and those who have joined in the suit) attorneys' fees;

j.      For an Order awarding Plaintiff (and those who have joined in the suit) pre-judgment and post-judgment interest at the highest rates allowed by law;

k.      For an Order awarding Plaintiff a service award as permitted by law;

l.      For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted by:

**MORGAN & MORGAN, P.A**.

**_C. Ryan Morgan, Esq._**
FBN 0015527
N. Orange Ave., 16th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Telephone:      (407) 420-1414
Facsimile:       (407) 867-4791
Email:  rmorgan@forthepeople.com

**Paul M. Botros, Esq**.
FBN 0063365
600 N. Pine Island Road.
Suite 400
Plantation, FL 33324
Telephone:      (954) 327-5352
Facsimile:       (954) 327-3017
Email:  pbotros@forthepeople.com

And

**ANDERSON ALEXANDER, PLLC**

**Austin W. Anderson, Esq.**
Federal I.D. No. 777114
Texas Bar No. 24045189
austin@a2xlaw.com
*pro hac vice* application forthcoming

**Clif Alexander, Esq.**
Federal I.D. No. 1138436
Texas Bar No. 24064805
clif@a2xlaw.com
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284
*pro hac vice* application forthcoming

**ATTORNEYS IN CHARGE FOR PLAINTIFF AND PUTATIVE CLASS MEMBERS**