UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DODD BLANDON, individually and on
behalf of all others similarly situated,

      Plaintiff,                    CASE NO.: 6:19-cv-02420-WWB-GJK

v.

WASTE PRO USA, INC.,

      Defendant.

_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

Defendant WASTE PRO USA, INC., by counsel and pursuant to Federal Rule of Civil Procedure 56, moves for summary judgment in its favor and against Plaintiff DODD BLANDON ("Blandon") and the Opt-In Plaintiffs, as follows:

## I.    PERTINENT BACKGROUND[1]

### A. The Day Rate Compensation Method

Blandon brings this action on behalf of drivers who are or were employed by subsidiaries of Defendant in Alabama, Arkansas, Georgia, Louisiana, Mississippi, and Tennessee (the "Subsidiaries"). [Doc. 1, ¶¶ 10; Doc. 52, ¶ 2.] The Subsidiaries provide solid waste collection and disposal and recycling services. [Doc. 1, ¶ 19.]

Blandon claims he was paid by the day rate during his employment. [Doc. 1, ¶ 2.] Under this pay method, employees were and are paid a fixed sum for the day or the task that they were assigned during any given shift. [Doc. 158-1, p. 11:15-19; Doc. 158-1, p. 156.] The overtime paid to day rate employees is calculated as follows:

- All amounts earned by a driver in a workweek were added together to determine the Workweek Earnings;
- The Workweek Earnings are divided by the number of hours worked in that workweek to determine the Regular Rate;[2]
- Because the drivers (as day rate employees) have already been compensated for the first forty (40) hours through their Workweek Earnings, the Regular Rate is divided by two (2) to arrive at the Overtime Premium Rate;
- The Overtime Premium Rate is multiplied by the overtime hours to determine the Overtime Earnings;

---

[1]  Additional undisputed facts entitling Defendant to summary judgment are addressed below in Section II in the context of Blandon's separate claims.

[2]  This calculation of the regular rate is consistent with 29 C.F.R. § 778.109, which provides: The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in the workweek for which such compensation was paid.

- The driver's Workweek Earnings and Overtime Earnings are added together for the driver's Gross Earnings.

[Doc. 158-1, p. 156.]  For example, if an employee had $800 in Workweek Earnings for 50 hours, his Regular Rate and Overtime Earnings would be calculated as follows:

- $800 (Workweek Earnings) / 50 hours (Total hours worked) = $16.00 Regular Rate for the week;
- $10 Hourly Rate x .5 = $8 Overtime Premium Rate;
- $8 (Overtime Rate) x 10 (Overtime hours worked) = $80 Overtime Earnings
- $800 (Gross Weekly Pay) + $80 (Overtime Earnings) = $880

### B. Plaintiff's Claimed FLSA Violations

In his Complaint, Blandon alleges that Defendant violated the FLSA in several ways.  First, Blandon alleges that he "and the Putative Class Members were compensated by Defendant with a purported day rate as well as other forms of compensation." [Doc. 1, ¶ 31.]  Blandon further alleges that:

> [t]hese other forms of compensation are not in compliance with the day rate provision of 29 C.F.R. § 778.112 and ultimately result in a miscalculation of Plaintiff and the Putative Class Members' regular rate and resulting overtime compensation. These other forms of compensation (helper pay and safety bonuses) may vary by name and amount, but nevertheless have the same overall effect of invalidating Defendant's attempt to categorize and compensate Plaintiff and the Putative Class Members under the day rate provision permitted by 29 C.F.R. § 778.112.

[*Id.*]  Because Blandon contends that this alleged violation "invalidates" the day rate method (the "Bonus Invalidation Claim"), he contends the Overtime Premium should be at one and one-half times the Regular Rate, rather than one-half.  [Doc. 1, ¶ 29.]

Second, Blandon alleges that "Defendant did not pay a true day rate for any and all hours worked in a given day, but placed limitations on the number of hours

worked before the day rate was paid" (the "Half Day Rate Claim").  [*Id.*, ¶ 2.] Although the Complaint does not specify the "number of hours worked before the day rate was paid," Blandon alleged in his declaration in support of his Motion to Conditionally Certify Collective Action that if he "worked less than 4 hours" he would be paid half of his day rate.  [Doc. 42-8, ¶ 9.]

Third, Blandon alleges that Defendant required Plaintiffs to "perform pre-shift and post-shift duties while not clocked in" (the "Off-the-Clock Claim").  [Doc. 1, ¶ 3.] Finally, Blandon alleges that Defendant "automatically deducted thirty (30) minutes for lunch break that Defendant knew Plaintiff, and others similarly situated, regularly worked through" (the "Lunch Deduction Claim").  [*Id.*]

## II.  MEMORANDUM OF LAW

### A.  Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  *Taylor v. Allworth*, 2021 WL 3406268, *1 (quoting Fed. R. Civ. P. 56).  "When ruling on a motion for summary judgment, reasonable inferences are drawn in the nonmoving party's favor and evidence favorable to the moving party that the jury need not believe is disregarded."  *Id.* (citing *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192-93 (11th Cir. 2004).  "A moving party is entitled to summary judgment when the nonmoving party fails 'to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof.'"  *Id.* (quoting *Celotex Corp. v. Catrett*,

3

477 U.S. 316, 323 (1986).  "The nonmoving party must 'go beyond the pleadings and his own affidavits,' and he must point to evidence in the record that demonstrates the existence of a genuine issue for trial."  *Id.* (quoting *Celotex*, 477 U.S. at 323).

**B.    Defendant Is Entitled to Summary Judgment on Plaintiff's Day Rate Invalidation Claim.**

In his Bonus Invalidation Claim, Blandon contends that the payment of bonuses, in addition to the day rate, "invalidates" the day rate compensation method. [Doc. 1, ¶ 31.]  Plaintiff cites to 29 C.F.R. § 778.112, which provides:

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, ***and if he receives no other form of compensation for services***, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

29 C.F.R. § 778.112 (emphasis added).  Blandon seizes on the highlighted language and argues that if an employee is paid "other forms of compensation" such as "help pay and safety bonuses," they are no longer a day rate employee, and must be treated as an hourly employee for overtime purposes.  [Doc. 1, ¶¶ 3, 31.]  This argument is contrary to Eleventh Circuit precedent and it has already been rejected in another case filed against Defendant in this District.

Before addressing the deficiencies in the Bonus Invalidation Claim, it should be undisputed that employees paid under a day rate method are entitled to overtime at a rate of half of the Regular Rate, rather than the time-and-a-half rate provided for employees paid under different compensation methods (such as hourly employees).

This is because day rate employees have already received straight time payment for all hours worked in the workweek through the day rate (including any overtime hours), thereby entitling them to an additional half time overtime premium for each hour over forty (40) that they worked in the workweek. The Department of Labor ("DOL") recently confirmed that the overtime premium for day rate employees is properly paid at half of the regular rate, as follows:

> Section 778.112 concerns instances where the employee is paid a flat amount for a day's work or a specific job, regardless of how many hours were actually worked on a particular day or for a particular job. The regular rate is computed as the sum of all day rate or job rate compensation in a workweek divided by the total number of hours worked. As with piece rate pay, this constitutes straight-time pay for all hours worked. Accordingly, the employee "*is then entitled to extra halftime pay at this [regular] rate for all hours worked in excess of 40 in the workweek.*"

*See Fluctuating Workweek Method of Computing Overtime under 29 CFR 778.114,* at 85 FR 34970, effective Aug. 7, 2020 (the "2020 Final Rule"), pp. 7-8 (emphasis added). [Attached as **Exhibit 1**.]

Although Blandon does not appear to dispute that the overtime premium for day rate employees is one-half of the regular rate, his position is that Defendant violated the day rate provision, 29 C.F.R. § 778.112, by "coupling" the day rate with "other forms of compensation," such as "help pay and safety bonuses." [Doc. 1, ¶ 3, 31.] According to Blandon, Section 778.112's reference to "no other form of compensation for services," prohibits the payment of bonuses in addition to the day rate, and that doing so "invalidates" the day rate compensation method. [*Id.*]

Blandon's argument arises from a misreading of 29 C.F.R. § 778.112. Section

5

778.112 does not prohibit the payment of "other forms of compensation" to day rate employees; instead, it is merely an ***example*** of how to calculate the regular rate ***if*** the employee receives only the day rate and no "other forms of compensation."  Section 778.109 clearly states that the sections that follow, including Section 778.112, "give some examples of the proper method of determining the regular rate in particular circumstances," and those sections do not impose strict limitations on how day rate employees can be paid.

The Eleventh Circuit has squarely held that the examples following Section 778.109 are just that: examples of how to calculate the regular rate in certain circumstances, and not stringent limitations.  *See Allen v. Bd. of Pub. Educ.*, 495 F. 3d 1306, 1311-13 (11th Cir. 2007).  In Allen, the plaintiffs were bus drivers who were paid different hourly rates depending on the specific route they drove.  *Id.* at 1310.  The regular rate was calculated using a weighted hourly rate, which was calculated by dividing the straight time compensation by the number of hours worked.  *Id.*  The bus drivers contended that the regular rate was improperly calculated under 29 C.F.R. § 778.115, which provides guidance for "employees working at two or more rates." That section states that "[w]here an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay . . . have been established, his regular rate for that week is the weighted average of such rates." *Id.*  The bus drivers in *Allen* argued that because they were not engaging in "two or more different types of work," the weighted rate method could not be used to determine the hourly rate.  *Id.* at 1312-13.

6

The Eleventh Circuit rejected the bus drivers' argument, finding that "when viewed in the proper context, it is apparent that section 778.115 contains no such mandate" that employees working at two or more rates perform different types of work. *Id.* at 1312. Instead, when Section 778.115 is properly read in conjunction with Section 778.109, "it becomes apparent that the former is one of the ***examples*** mentioned in the latter as a way that the regular rate may be calculated in certain cases." *Id* (emphasis added). As a result, although Section 778.115 "exemplifie[d] one way that a regular rate [could] be determined, it [did] not mandate that different rates of pay [were] only permitted when different types of work [were] performed." *Id.*

Similarly, Section 778.112 "exemplifies one way that a regular rate may be determined." *Id.* As with the employer in *Allen*, day rate drivers in this case were paid in accord with the FLSA – despite some Plaintiffs receiving bonuses in certain workweeks – because Section 778.112, like Section 778.115, is not a mandate. Rather, it is merely an example of how to calculate the regular rate when the day rate employee receives no "other forms of compensation." In other words, Section 778.112 explains how to calculate the regular rate ***if*** the employee received only a day rate and no other form of compensation, but it does not ***preclude*** an employer from paying "other forms of compensation" in addition to the day rate. Accordingly, the receipt of bonuses in addition to the day rate does not prohibit their characterization as day rate employees, just as the pay structure in *Allen* complied with the FLSA despite not following the example provided in Section 778.115.

In a recent lawsuit brought against Defendant, *Thomas v. Waste Pro USA, Inc., et al.*, Case No. 8:17-cv-02254-CEH (M.D. Fla.), employees who worked as Helpers[3] raised a claim identical to the Bonus Invalidation Claim here, and contended that the payment of bonuses such as help pay violated 29 C.F.R. § 778.112.  The *Thomas* court granted summary judgment to Defendant and found that the payment of "other forms of compensation" did not violate the day rate provision.  *Thomas*, 2019 WL 4751802, *20.  Relying on the Eleventh Circuit's ruling in *Allen*, the *Thomas* court concluded:

> [T]he fact that [day rate employees] received other compensation in the form of bonuses or for additional tasks does not mean they were not paid a day rate . . . . Accordingly payment of overtime to Plaintiff or Helpers at a half rate, instead of a time and a half rate, is permissible.

*Id.* (citing *Allen*, 495 F.3d at 1313.)

Other courts in this Circuit have reached the same conclusion.  In *Powell v. Carey Intern, Inc.,* 514 F. Supp. 2d 1302 (S.D. Fla. 2007), the court held that although the plaintiff drivers received six (6) different forms of compensation, the employer complied with Section 778.112 because, despite the variability, the plaintiffs' compensation was not anchored to or correlated with the number of hours they worked.  *Id.* at 1306.  The *Powell* court further found that:

> Nothing in § 778.112 precludes a "flat sum" from having multiple components, as long as the compensation is paid on a per job basis . . . Further, the fact that the amount charged to customers, which then affects the amount paid to Plaintiffs, may depend on such a variable as the distance traveled for a particular trip, does not render § 778.112 inapplicable, so long as the compensation is paid by the job.

---

[3]     Helpers ride on the back of trucks to assist in the collection of trash and recyclables. The Helpers in *Thomas* were also day rate employees paid identically to the day rate drivers.

*Id.* at 1313.

Similarly, in *Bunday v. Suncoast Beverage Sales, LLP*, 2009 WL 10670167 (M.D. Fla. Sept. 18, 2009), the court addressed whether section 778.112 applied to a sales representative who was paid a day rate and a $5.00 bonus for completing his paperwork every day, as well as a commission of $0.11 per case of beer delivered. *Id.* at *6-7. The plaintiff argued that since his pay was different every day, based on whether he completed his paperwork and how many cases he delivered, his pay could not be considered a flat rate. *Id.* at *6. The court concluded that the plaintiff was paid a day rate because day rate payment methods could be variable as long as an employee's compensation was not anchored to the number of hours he or she worked. *Id.* at *6-7. The court explained that the plaintiff's compensation was "an analog to a job rate, since he was paid to complete a defined route of visits each day, regardless of the length of time it took him to complete such rounds." *Id.* at *7. That other factors of his pay were variable did not alter that he was paid a job rate. *Id.*

The *Bunday* court further stated that "[d]espite the presence of a degree of murkiness due to the hybrid nature of [the plaintiff's] compensation, logic does not support [the p]laintiff's contention" that he was an hourly employee because "[h]e received $80 daily, regardless of the hours he worked." *Id.* Thus, "[p]aperwork incentives and commission notwithstanding, [the plaintiff's] pay was an archetypal example of a flat sum pay scheme" because "his hours could vary by large amounts and [he] would still receive the same base pay for having completed a defined set of tasks each day." *Id.*

More recently, another district court in this Circuit reached a similar conclusion. *See LaFreniere v. Coca-Cola Bottling Co. United, Inc.,* 2020 WL 4039005 (N.D. Ga. July 17, 2020). The plaintiff in *LaFreniere* claimed that an employer's compensation methodology combining day rates and hourly rates for the work performed violated 29 C.F.R. § 778.112. *See id.* at *1, 2. The *LaFreniere* court found that the compensation methodology did not violate the FLSA because section 778.112 "supplies a method for employers to calculate the regular rate of pay based on a day rate for purposes of computing overtime compensation, [and] it does not by its plain language prohibit an employer from using a day rate in combination with another form of compensation." *Id.* at *2-3 (citing 29 C.F.R. § 778.112). The court also ruled that "section 778.112 'exemplifies one way that a regular rate may be determined.' It does not prohibit an employer from using a pay scheme that combines day rates with other forms of compensation." *Id.* at * 3 (citing *Allen* 495 F.3d at 1313).

In addition to these decisions in this Circuit, the 2020 Final Rule provides guidance regarding the payment of bonuses in this context. *See* 85 FR 34970. The 2020 Final Rule confirmed *Allen* by clearly stating that "§ 778.114 is an ***example*** of a scenario where additional overtime compensation is properly computed as one-half the regular rate because the straight-time portion of the required 'one and one-half times the regular rate' has already been paid." *Id.* at p. 33 (emphasis added). It then confirmed the broadening of Allen's holding beyond the fluctuating workweek methodology by stating that "[a]ny pay arrangement that provides compensation for all hours worked in a workweek would cover the straight-time portion of required overtime pay, leaving

the need to pay only an additional half-time premium for each overtime hour" and cited specifically to section 778.112. *Id.*

The 2020 Final Rule went on to specifically discuss bonuses as not impacting whether the overtime premium is paid at half the regular rate, as follows:

> The fact that an employee received a bonus or premium payment as part of such an arrangement would not negate the fact that he or she has already received the straight-time portion of required overtime pay as long at the additional payment is appropriately included in the regular rate. In other words, payment of bonuses, premiums, and other additional pay under the fluctuating workweek method will not change the half-time overtime calculation, as long as those payments are appropriately included in the regular rate, because the employees will have already received the straight-time due to them for all hours worked, and only additional halftime needs to be computed for overtime hours to comply with the FLSA.

*Id.* at pp. 33-34.   While the 2020 Final Rule was in the context of the fluctuating workweek, it would similarly apply to the day rate methodology at issue in this case. Because this compensation methodology complies with the FLSA, summary judgment should be granted in favor of Defendant on the Bonus Invalidation Claim.

## C.   Defendant Is Entitled to Summary Judgment on Plaintiff's Half Day Rate Claim.

In the Half Day Rate Claim, Blandon also seeks to invalidate the day rate method by claiming that "Defendant did not pay a true day rate for any and all hours worked in a given day, but placed limitations on the number of hours worked before the day rate was paid."   [*Id.*, ¶ 2.]   Blandon contended in support of his Motion to Conditionally Certify Collective Action that if he worked less than four (4) hours in a given workday, he would only receive half of his day rate.   [Doc. 42-8, ¶ 9.]

Despite Plaintiff's claim that Defendant had a uniform practice of paying less than the full day rate if a Driver worked less than a certain number of hours in the day, only *6 of 214 collective members* ever received less than the full day rate during their employment: Blandon (one instance), Laymond Smith (two instances), Province (one instance), Leroy Miller (one instance), Moses Lee (one instance), and Christopher Jones (four instances).  [Doc. 165-5, ¶ 6.]  Moreover, if the statute of limitations is not equitably tolled during the pendency of the *Hansen* and *Privette* actions in South Carolina, only 4 members of the collective received less than the full day rate during the limitations period (Province, Leroy Miller, and Moses Lee, and Christopher Jones).[4]  [*Id.*, ¶¶ 6-8.]  Notably, this group does not include Blandon, who received less than the full day rate only once, on April 18, 2015.  [*Id.*]

As shown below, the isolated instances involving payment of less than the full day rate are permissible under the FLSA.  Moreover, the vast majority of Opt-In Plaintiffs who never received less than the full day rate suffered no injury and therefore lack standing the pursue the Half Day Rate claim.

> ### 1.   Fixed Payments Equal to Half of a Day Rate for Certain Tasks Are Not Prohibited under the FLSA.

On the rare occasions that a collective member was paid a fixed rate that was less than the full day rate, it was due to a special task being assigned.  For example, in

---

[4]      In his Complaint, Blandon states in conclusory fashion that the limitations period was "tolled" during the pendency of the *Privette* and *Hansen* actions in South Carolina, citing to 29 U.S.C. § 256.  Section 256 says nothing about equitable tolling under those circumstances and Blandon has never sought equitable tolling of the statute of limitations.

the *one instance* in which Blandon received less than his full day rate, on Saturday, April 18, 2015, he clocked in at 6:27 a.m., and clocked out at 9:00 a.m. [Doc. 150-1, p. 37:12-16.]  Blandon testified that on that day, a Saturday, he either completed a route from the previous day, or handled "missed pick-ups that's scattered around the city and the county." [Doc. 150-1, p. 37:12-38:6.]  He further testified that any time he worked on a Saturday, it was because the drivers voted to come to work on a weekend to complete "missed pick-ups," rather than doing so during their Friday shift or the next Monday. [Doc. 150-1, p. 25:8-26:11.]  Of the nine (9) total instances in which a member of the collective received less than the full day rate, seven (7) of those instances occurred on a Saturday (Blandon (4/18/2015), Laymond Smith (11/21/2015 and 3/26/2016), Moses Lee (7/8/2017), and Christopher Jones (11/21/2015, 5/29/2016, and 11/29/2016). [Doc. 165-1, ¶ 10.][5]

The rare payment of a fixed amount for a particular task (even if the fixed amount is less than the normal day rate) does not negate the characterization of day rate employees, as all of the fixed rates received in a workweek were still included in the calculation of the Regular Rate.  More than fifty years ago, the DOL gave its opinion on how to calculate the Regular Rate of pay for purposes of calculating the overtime for bus drivers compensated both by day rates and hourly rates (the "1967

---

[5]    As discussed below regarding the Lunch Deduction Claim, Blandon also received less than the full day rate several times during the two-week pay period between May 10, 2015 and May 23, 2015.  In all of those instances, however, Blandon also received his full day rate on every day for which he also received a half day rate.  As a result, Blandon was actually overpaid on each of the days that he received a half day rate during that pay period.  [Doc. 150-1, p. 42:3-48:9.]

DOL Opinion"). *See DOL Opinion Letter*, FLSA-953 (June 22, 1967), attached hereto as **Exhibit 2**. The DOL first quoted the day or job rate regulation, stating that when no other forms of compensation are received, then the day rates are added together and divided by the total hours worked, with half of that amount being the overtime amount for hours over 40 per workweek. *Id*. Importantly, the DOL went on to state that "[i]n those workweeks he makes 'extra trips' at $2.00 per hour, the hours worked and the wages received must be added to the total hours worked and the total earnings received. The total wages at both day rates and hourly rates are added together and divided by the total hours worked to determine the regular rate for that week. Additional ***half-time*** must be paid at the new regular rate." *Id*. (emphasis added).[6] Applied here, the payment of the full day rate for one task (an assigned route) and a half day rate for a different task (collecting "missed pick-ups") is permissible, provided that both rates are included in the calculation of the Regular Rates (as occurred here).

In *Thomas*, the court found that half day rates paid to Helpers did not invalidate the day rate compensation method. 2019 WL 4751802, at *20. Specifically, the *Thomas* court determined that:

> the payment of half day rates for tasks outside of Helpers' usual tasks does not take Plaintiff or other Helpers outside the scope of day rate employees. [Because] the primary payment to Plaintiff and Helpers was through a day rate, and that amount could vary based on additional tasks. Accordingly, payment of overtime to Plaintiff or Helpers at a half rate,

---

[6] Like the 2020 Final Rule, the 1967 DOL Opinion is entitled to *Chevron* deference because Congress delegated authority to the DOL to make rules carrying the force of law, and the Opinion was promulgated "in the exercise of that authority." *See Viart,* 149 F. Supp. at 1349 (citing *Mead Corp.,* 533 U.S. 218); *see also Thomas,* 2019 WL 4751802 at *17 (the 1967 DOL Opinion "is persuasive and entitled to respect").

instead of a time and a half rate, is permissible.

*Id.*

Here, as in *Thomas*, the occasional payment to Plaintiffs of a different fixed rate for tasks other than driving their assigned route does not change the fundamental premise that Plaintiffs are day rate employees.  Because there is no prohibition against paying different fixed amounts to day rate employees, the payment of fixed rates equal to a half day rate does not invalidate the overtime calculation, which pays the Overtime Premium at half the Regular Rate.  In other words, it is permissible to pay Drivers the full day rate for driving their assigned route, and a different amount (*i.e.,* half of the day rate) when they perform a different task such as working a few hours on a Saturday to collect "missed pick-ups," provided that both pay rates are included in the calculation of the Regular Rate.  That is what happened here on the rare occasions on which Blandon or an Opt-In Plaintiff received less than the full day rate. The Half Day Rate Claim therefore fails as a matter of law.

> **2.    Infrequent Instances of a Small Number of Plaintiffs Being Paid a Half Day Rate Does Not Invalidate the Compensation Methodology**.

The Half Day Rate Claim also fails for a separate reason, namely that the instances of half days were so infrequent that they do not invalidate the entire compensation plan for every day rate driver.  On that point, the Court need look no further than another DOL Opinion.

In a 2006 Opinion Letter ("2006 DOL Opinion"), the DOL considered whether an employer paying under the fluctuating workweek method could deduct a day's pay

for employees who were out sick without accruing sick time.  *See DOL Opinion Letter*, FLSA2006-15 (May 12, 2006), attached hereto as **Exhibit 3**. The fluctuating workweek method pays a salary, regardless of the length of the workweek, similar to the day or job rate which pays for a day or task, regardless of how many hours worked that day or for that task.  *See* 29 CFR §§ 778.114 and 112.   While finding that the employer could not deduct a day's pay from the workweek for a sick day that was taken without accruing a paid sick day, the DOL made an important finding that is applicable here.  The DOL stated that "[i]f the deductions are made frequently or consistently, then the practice of making such deductions would raise questions as to the validity of the compensation plan." [*See* Ex. 3.] Conversely, infrequent or inconsistent deductions would not invalidate a compensation methodology.

In *Conne v. Speedee Cash of Miss., Inc.*, 246 Fed. Appx. 849 (S.D. Miss., Oct. 11, 2005), the Southern District of Mississippi relied upon the 2006 DOL Opinion in finding that a single improper deduction would not invalidate the fluctuating workweek plan. *Id.* at 851. Here, only six members of the collective ever received less than the full day rate during the pertinent period.  [Doc. 165-1, ¶ 6.]  Moreover, those six individuals only received less than the full day rate on 9 occasions.   [*Id.*] Considering that the members of the collective worked tens of thousands of days during their employment, the payment of the half day rate on 9 occasions does not invalidate the day rate compensation plan.

### 3.      Even if This Court Determines that the Rare Instances of Half Day Rate Payments Violate the FLSA, Plaintiffs Who Did Not Receive those Payments Lack Standing to Bring that Claim.

Two months ago, the Supreme Court issued a landmark ruling narrowing Article III standing requirements for claimed violations of federal laws. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). While *TransUnion LLC* was an action under the Fair Credit Reporting Act ("FCRA"), the holding broadly reaches other claimed statutory violations for which there was no concrete harm, including the Half Day Rate Claim by the 208 Opt-In Plaintiffs who were never paid less than the full day rate.

*TransUnion LLC* involved the claims of 8,185 consumers whose credit files had alerts placed upon them that they were potential drug traffickers, terrorists or other serious criminals. 141 S.Ct. at 2200. The misleading information was disseminated for only 1,853 of the class members. *See id*. Finding that only those individuals could pursue their stated claims, the Court drew a bright line in succinctly stating that where there was "[n]o concrete harm, no standing." *See id*. at 2214.

Giving broader applicability than the FCRA, the Court drew a sharp distinction between "(i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of a federal law." *See id.* at 2206. The Court also reminded that "Article III standing does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *Id.* at 2208 (*quoting Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring)). Moreover,

the Court stated that "[a]s the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *Id.* at 2207.

Importantly, the Court considered standing to pursue each of the three claims that were raised by the plaintiffs (reasonable-procedures claim, disclosure claim and summary-of-rights claim). *See id.* at 2208-2214.  In so doing, the Court stated that "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek."  *Id.* at 2208.  In applying the concrete-harm standing analysis, the Court found that under the first claim, only 1,853 of the class members had standing, under the second none had standing, and under the third only the named plaintiff had standing. *Id.* at 2214.  The Court then remanded the case back to the Ninth Circuit to consider "whether class certification is appropriate in light of [the Court's] conclusion about standing." *Id.*

Applying the Court's concrete-injury rule of standing to the Half Day Rate Claim, it is clear that if the payment of the half day rate violated the FLSA, only the 6 Plaintiffs who received that form of payment suffered a concrete injury in fact.  Indeed, they are the only Plaintiffs who can legitimately claim that they suffered a monetary harm from a claimed FLSA violation under the Half Day Rate Claim. *Id.* at 2204. Because 208 Plaintiffs never suffered a concrete injury in fact from the Half Day Rate Claim, they have no standing to bring that claim to the extent this Court does not grant summary judgment outright.  Consequently, even if this Court does not grant summary judgment to Defendants on the Half Day Rate Claim, it should be granted as to the 208 collective members who suffered no concrete injury in fact.

18

**D.    Defendant Is Entitled to Summary Judgment on Plaintiff's Off-the-Clock Claim.**

In his Off-the-Clock Claim, Blandon alleges Defendant required "pre-shift and post-shift duties while not clocked in." [Doc. 1, ¶ 3.]  Because the record shows that neither Blandon nor the Opt-In Plaintiffs will be able to meet their burden of proof at trial, Defendant should be granted summary judgment.

Even though Blandon alleged in his Complaint that he was required to work off-the-clock, he admitted in both his deposition testimony and discovery responses that this never occurred.  Blandon testified as follows:

Q:    Did you ever do any work before you clocked in for the day?
A:    No. […]
Q:    Okay.  Did you ever do any work after you clocked out for the day?
A:    No. […]
Q:    When you worked for Waste Pro in Brookhaven, were you aware of any policy requiring drivers to do their pre-shift and post-shift duties while unclocked—
A:    No. […]
Q:    Were you aware, when you worked at Waste Pro, of any policies requiring drivers to do any of these duties off the clock?
A:    No.   […]
Q:    But my understanding from your testimony today is that you did not work off-the-clock for Waste Pro, correct?
A:    No, I didn't.

[Doc. 150-1, pp. 14:9-11, 55:23-56:11, 61:10-13.]   Similarly, in his interrogatory responses, Blandon stated that the first thing that he did each day when he arrived at work was clock in, and the last thing he did at the end of the day was clock out.  [Doc. 149-5, p. 6, Response No. 3.]  Due to Blandon's undisputed testimony that there was no policy requiring Drivers to work off-the-clock, and that he never did so, Defendant

is entitled to summary judgment on his Off-the-Clock Claim.[7]

As for the Opt-In Plaintiffs, each has the burden of "prov[ing] that he has in fact performed work for which he was improperly compensated," and of producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Grantham v. Bayside Business Enter.*, 2017 WL 11113198, *5 (M.D. Fla. Apr. 12, 2017) (quoting *Anderson v. Mt. Clemons Pottery Co.*, 66 S. Ct. 1187, 1194 (1946)). Opt-In Plaintiffs must also establish that Defendant had actual or constructive knowledge that they were working off the clock. *Santana v. RCSH Operations, LLC*, 2012 WL 463822, *4 (S.D. Fla. Feb. 13, 2012).

One hundred and ninety-two (192) Plaintiffs served verified responses to discovery requests regarding the Off-the-Clock Claim. [Doc. 149.] Of that group, 101 claimed that they worked off-the-clock during their employment.[8] ***None*** of those

---

[7]    In his Declaration submitted in support of his Motion to Conditionally Certify Collective Action, Blandon swore under oath that he "was regularly required to perform off-the-clock work for Defendants." [Doc. 42-8, ¶ 16.] In his deposition, Blandon admitted that this sworn statement was false. [Doc. 150-1, p. 61:5-13.] Incredibly, Blandon also testified that he only "glanced at" his sworn Declaration before signing it, and that he had only "skimmed through it," and "didn't read the complete paper…." [*Id.*, 61:20-25.] Blandon's cavalier willingness to submit false testimony in support of his conditional certification motion should call into question his other sworn statements.

[8]    Doc. Nos. 149-1, p. 4, ¶5; 149-2, p 3, ¶4; 149-5, p. 4, ¶9; 149-6, p. 3, ¶5; 149-8, pp. 4-5, ¶4; 149-9, p. 3, ¶5; 149-11, pp. 3-4, ¶4; 149-12, p. 3, ¶4; 149-13, p. 3, ¶4; 149-14, pp. 3-4, ¶4; 149-16, p. 3, ¶4; 149-17, p. 3, ¶5; 149-21, p. 3, ¶4; 149-22, pp. 3-4, ¶4; 149-23, p. 3, ¶5; 149-25, p. 3, ¶4; 149-27, pp. 3-4, ¶4; 149-29, p. 3, ¶4; 149-30, p. 3, ¶4; 149-31, pp. 3-4, ¶4; 149-32, p. 4, ¶5; 149-33, p. 3, ¶4; 149-34, p. 3, ¶5; 149-39, pp. 3-4, ¶4; 149-40, p. 3, ¶4; 149-44, p. 3, ¶4; 149-45, p. 3, ¶4; 149-46, pp. 3-4, ¶4; 149-49, p. 3, ¶4; 149-50, p. 4, ¶5; 149-54, p. 3, ¶4; 149-56, pp. 3-4, ¶4; 149-57, p. 4, ¶5; 149-60, p. 3, ¶4; 149-63, p. 3, ¶5; 149-65, p. 3, ¶4; 149-67, p. 3, ¶4; 149-68, p. 3, ¶4; 149-72, p. 3, ¶4; 149-75, p. 3, ¶3; 149-77, pp. 3-4, ¶4; 149-78, p. 3, ¶5; 149-80, p. 3, ¶4; 149-81, p. 3, ¶4; 149-82, p. 3, ¶5; 149-84, pp. 3-4, ¶4; 149-85, p. 3, ¶4; 149-86, p. 3, ¶4; 149-87, p. 3, ¶4; 149-88, p. 4, ¶4; 149-91, pp. 3-4, ¶4; 149-93, p. 4, ¶5; 149-94, pp. 3-4, ¶4; 149-97, p. 3, ¶4; 149-99, p. 3, ¶4; 149-100, p. 3, ¶4; 149-101, p. 3, ¶4; 149-102, p. 3, ¶4; 149-106, p. 3, ¶4;

Plaintiffs, however, provided even an estimate of the number of hours that they worked off-the-clock; nor did they provide any specifics as to how often they did so. [*Id.*]  Defendant specifically asked each of those Plaintiffs to specify the amount of damages they are seeking on each of their claims, including the Off-the-Clock Claim. [*See, e.g.,* Doc. 149-1, p. 7, Int. No. 8.]  ***Every*** Plaintiff failed to specify any damages, and instead responded that they would "provide an updated damage calculation once complete." [*See, e.g.,* Doc. 149-1, p. 8, Int. Resp. No. 8.]  ***None*** ever did so.

Moreover, ***none*** of the Plaintiffs who responded to the Court's Interrogatories specified any amount of damages arising from the Off-the-Clock Claim.  [Doc. 66-71, 75-84, 89-90, 92-95, and 105.]   Accordingly, they have utterly failed to provide "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Grantham,* 2017 WL 11113198, *5; *see also Johnson v. S.E. Freight Lines, Inc.*, 2008 WL 11422590, at *21 (N.D. Ala. Jan. 23, 2008) (granting summary judgment to defendant on off-the-clock claim, due to the plaintiff's failure to provide "definite and certain evidence" in support of her claim).

---

149-108, p. 3, ¶4; 149-109, pp. 3-4, ¶4; 149-113, p. 3, ¶4; 149-114, p. 3, ¶5; 149-115, p. 3, ¶5; 149-118, p. 3, ¶4; 149-120, p. 3, ¶4; 149-122, p. 3, ¶4; 149-124, pp. 3-4, ¶4; 149-127, p. 3, ¶5; 149-128, p. 3, ¶4; 149-129, pp. 3-4, ¶4; 149-130, p. 3, ¶4; 149-131, p. 3, ¶4; 149-132, p. 3, ¶4; 149-137, p. 3, ¶4; 149-139, pp. 3-4, ¶4; 149-143, pp. 3-4, ¶4; 149-145, p. 3, ¶4; 149-147, p. 3, ¶4; 149-148, p. 3, ¶4; 149-150, p. 3, ¶4; 149-153, p. 3, ¶4; 149-152, pp. 3-4, ¶4; 149-158, pp. 3-4, ¶4; 149-159, pp. 3-4, ¶4; 149-160, p. 4, ¶5; 149-162, p. 3, ¶4; 149-164, p. 3, ¶5; 149-166, p. 3, ¶4; 149-170, p. 3, ¶4; 149-175, p. 4, ¶5; 149-176, p. 3, ¶4; 149-177, p. 3, ¶4; 149-178, p. 3, ¶4 ; 149-180, p. 3, ¶4; 149-181, p. 3, ¶4; 149-182, p. 3, ¶4; 149-186, p. 4, ¶5; 149-187, p. 3, ¶3; 149-188, p. 3, ¶4; 149-190, p. 3, ¶4; 149-192, p. 3, ¶4; 161-1, p. 3, ¶4; 161-2, p. 3, ¶4; 161-3, p. 3, ¶4; 161-4, p. 3, ¶4; 161-5, p. 3, ¶4; 161-7, p. 3, ¶4; 161-8, p. 3, ¶4.

The remaining 91 Plaintiffs either acknowledged that they did not work off-the-clock or responded that they were without knowledge whether they did so.  [*See generally* Doc. 149.]  They therefore do not claim the violation, or they have produced no evidence in support of their claims.  Defendant is therefore entitled to summary judgment on their claims.[9]

### E. Defendant Is Entitled to Summary Judgment on Plaintiff's Lunch Deduction Claim.

Finally, in his Lunch Deduction Claim, Blandon alleges that Defendant "automatically deducted thirty (30) minutes for lunch breaks that Defendant knew Plaintiff, and others similarly situated, regularly worked through."  [Doc. 1, ¶ 3.]  The record is devoid of any evidence in support of this claim, which entitles Defendant to summary judgment.  *Celotex*, 477 U.S. at 323.

With the limited exception of Blandon (addressed below), the payroll records of every Plaintiff shows that they were never clocked out for lunch, and that no time was ever deducted for a lunch break.  [Doc. 165-1, ¶ 13; *see also* Doc. 51-1, ¶ 4, Doc. 53-1, ¶ 7, 54-1, ¶ 7, Doc. 56-1, ¶¶ 14,16, 18, Doc. 143-1, p. 23:1-19, Doc. 146-1, pp. 49:17-50:10.] Instead, the time records show when the Driver clocked in, when they clocked out, and the number of hours that they worked during the day.  [Doc. 165-1, ¶ 13.]  For *every* Plaintiff, the number of hours they were credited for each workday corresponds exactly to the times that they clocked in and clocked out, and therefore

---

[9]     As discussed in Section II(C)(3) above, these Opt-In Plaintiffs have no standing to pursue the Off the Clock Claim.  *See TransUnion,* 141 S. Ct. at 2208-14.

demonstrate that no time was ever deducted for lunch. [*Id.*][10]

As for Blandon, his pay records also show that he was not clocked out for lunch and that no time was ever deducted for lunch, with the exception of one pay period, addressed below. [Doc. 165-1, ¶ 16.] For example, on October 4, 2016, Blandon clocked in at 6:12 a.m. and clocked out at 1:12 p.m. [Doc. 165-1, p. 153.] He was credited for 7.0 hours for that day, which corresponds to his timecard punches. [*Id.*] The same is true for every other pay period, except for one pay period beginning on May 10, 2015. [Doc. 165-1, ¶ 16.]

During that pay period, Blandon's pay records show that he was clocked out between 11:00 a.m. and 11:30 a.m. on each of the nine days that he worked. [Doc. 165-1, ¶ 16; Doc. 165-1, p. 116.] Blandon apparently relies on those clocked out periods as evidence that Defendant automatically deducted 30 minutes for lunch on every day of his employment. As an initial matter, the May 10, 2015 pay period is the only pay period in which Blandon was clocked out for 30 minutes each day. But far more significantly, the alleged "lunch deductions" during the May 10, 2015 pay period actually resulted in Blandon being ***substantially overpaid*** during that pay period.

Blandon worked a total of 9 days during the May 10, 2015 pay period. [Doc. 165-1, ¶ 17; Doc. 165-1, pp. 51, 116.] But he was paid for ***16.5 days*** during that same pay period. [*Id.*] This overpayment resulted from Blandon being clocked out at 11:00

---

[10] As with the Off-the-Clock Claim, neither Blandon nor any of the Opt-In Plaintiffs provided any damages calculation regarding the Lunch Deduction Claim, in either their Answers to the Court's Interrogatories or in their responses to Defendant's interrogatories.

a.m. each day, and then clocked back in at 11:30 a.m.  [Doc. 165-1, ¶ 17.]  For each day during that workweek, Blandon received credit for working a full day for the time that he was clocked in before 11:00 a.m., and then for *another* full day or half day for the time between 11:30 a.m. and when he clocked out.  [*Id.*]  As a result, the days on which Blandon was clocked out for lunch did not result in a "lunch deduction."  Rather, he was overpaid for each of those days.  As a result, Blandon's Lunch Deduction Claim is entirely premised on a pay period for which he was overpaid, rather than underpaid.[11]

The bare assertions of off the clock work are not supported by the record evidence.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Willis v. Mock,* 600 Fed. Appx. 679, 681 (11th Cir. 2015) (citing *Scott v. Harris,* 550 U.S. 372, 380 (2007)).  Because the record is bereft of any evidence supporting the Lunch Deduction Claim, and because the evidence shows that no such deductions ever occurred, Defendant should be granted summary judgment.

---

[11]     In his deposition, Blandon acknowledged that he only worked 9 days during the May 10, 2015 pay period, and that he was paid for 16.5 days.  [Doc. 150-1, pp. 45:24-48:14.] Blandon further acknowledged that his paycheck for that pay period was about double his typical paycheck.  [*Id.*, pp. 43:16-44:10.]  Blandon also testified that he "probably" noticed that he had been substantially overpaid for the May 10, 2015 pay period, but acknowledged that he had no recollection of telling his supervisor or anyone else that he had been overpaid. [*Id.*, pp. 44:11-45:16.]

### F.   Summary Judgment is Appropriate on the Time-Barred Claims.

FLSA claims are subject to a two (2) year statute of limitations unless an employer's violations are deemed willful, in which case, a three (3) year statute of limitations applies. 29 U.S.C. § 255(a).  A claim under the FLSA accrues at the end of each pay period in which the employer has failed to pay overtime compensation. *See id.* (citing *Knight v. Columbus, Ga.*, 19 F.3d 579, 581 (11th Cir. 1994)). "In a collective action, the individual opt-in plaintiff's claim is considered to have commenced at the time of filing the notice of consent." *Id.* (citing 29 U.S.C. § 256(b)).

The claims of the following Opt-In Plaintiffs are time barred: (1) <u>Renita Williams</u>: consented on March 10, 2020 (Doc. 31-1, p. 2); last pay period ended on February 11, 2017 (Doc. 165-1, ¶ 19); (2) <u>Dennis Williams</u>: consented on November 30, 2020 (Doc. 112-1, p. 9); last pay period ended September 22, 2017 (Doc. 165-1, ¶ 20); (3) <u>Easter Irvin</u>: consented on filed November 30, 2020 (Doc. 112-1, p. 25); last pay period ended October 21, 2016 (Doc. 165-1, ¶ 21; (4) <u>Terry Clardy</u>: consented on November 7, 2020 (Doc. 107-1, p. 8); last pay period ended November 4, 2017 (Doc. 165-1, ¶ 22; and (5) <u>Lemarc Harper</u>: consented on December 21, 2020 (Doc. 118-1, p. 9); last pay period ended December 2, 2017 (Doc. 165-1, ¶ 23).

## VIII.   <u>CONCLUSION</u>.

For the foregoing reasons, the various claims asserted by Blandon fail as a matter of law. Consequently, summary judgment should be granted in favor of Defendant on each of Blandon's claims.

Respectfully submitted this 2nd day of September, 2021.

STOVASH, CASE & TINGLEY, P. A.

By: */s/ Matthew J. Pearce*
Amy S. Tingley, Esquire
Florida Bar No. 0068871
Matthew J. Pearce, Esquire
Florida Bar No. 0108368
Jennifer Belbeck Swadel
Florida Bar No. 88946
The VUE at Lake Eola
220 N. Rosalind Avenue
Orlando, Florida 32801
Telephone: (407) 316-0393
atingley@sctlaw.com
mpearce@sctlaw.com
jbelbeck@sctlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing to be served in the method indicated below to the following this 2nd day of September, 2021.

___HAND DELIVERY     C. Ryan Morgan, Esquire
___U.S. MAIL         MORGAN & MORGAN, P.A.
___FAX               20 N. Orange Ave 16th Floor
___EMAIL             Orlando, FL 32802
_✓ECF NOTICE         rmorgan@forthepeople.com


___HAND DELIVERY     Paul M. Botros, Esquire
___U.S. MAIL         MORGAN & MORGAN, P.A.
___FAX               8151 Peters Road Suite 4000
___EMAIL             Plantation, FL 33324
_✓ECF NOTICE         pbotros@forthepeople.com

___HAND DELIVERY        Austin W. Anderson, Esquire
___U.S. MAIL                Clif Alexander, Esquire
___FAX                    ANDERSON ALEXANDER, PLLC
___EMAIL                819 N. Upper Broadway
_✓ECF NOTICE          Corpus Christi, TX 78401
austin@a2xlaw.com
clif@a2xlaw.com

*/s/ Matthew J. Pearce*
Matthew J. Pearce

27