# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| **DODD BLANDON,** Individually, on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**WASTE PRO USA, INC.,**<br><br>Defendant. | **CASE NO. 6:19-cv-02420-WWB-GJK**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Dodd Blandon, individually and on behalf of all Opt-In Plaintiffs ("Plaintiffs"), files this Motion for Partial Summary Judgment on the grounds and authorities below, pursuant to Federal Rule of Civil Procedure 56. Specifically, Plaintiff Blandon will show that Defendant failed to meet its burden of proof on the following issues, and they are ripe for determination as a matter of law. There are no genuine issues of material fact upon which reasonable fact-finders could disagree on the following topics:

(1)    Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19 as a matter of law because it failed to prove that the bonuses at issue are discretionary, and thus excluded from the overtime provisions of the FLSA.

(2)    Defendant cannot prevail on its affirmative "Good Faith" defense pursuant to 29 U.S.C. § 260 because the evidence conclusively establishes that Defendant's violations of the FLSA were performed willfully and against the advice of counsel and the Department of Labor ("DOL").

(3)    Defendant cannot prevail on its affirmative defense pursuant to the Motor Carrier Act, 49 U.S.C. § 31501, *et seq.* ("MCA") because it cannot show Plaintiffs

transported goods in a practical continuity of movement in the flow of interstate commerce as required by 29 U.S.C. § 213.[1]

## I.  INTRODUCTION

This lawsuit seeks overtime compensation under the Fair Labor Standards Act (29 U.S.C. § 201, et al.) ("FLSA") due to Defendant's illegal practices toward Plaintiff and other Waste Disposal Drivers ("Drivers") who worked for Defendant in states outside of Florida, North Carolina, and South Carolina. See ECF No. 1. Plaintiffs allege Defendant violated the FLSA by improperly calculating their overtime wages when paid a day rate, by miscalculating their regular rate of pay and failing to include non-discretionary bonuses in their overtime calculation, and by failing to pay for all hours worked. *See generally id.*

Plaintiff presents this Motion for Partial Summary Judgment solely for purposes of streamlining the remaining and disputed issues that need to be presented to a jury. The issues, on which Plaintiff moves for partial summary judgment are issues on which Defendant carries the ultimate burden of proof at trial—a burden Defendant has failed to meet, as a matter of law. Because Defendant failed to raise genuine issues of material fact in support of its defenses, Plaintiffs have presented clear violations under the FLSA that would, at the very least, entitle Plaintiff and the Opt-In Plaintiffs to partial judgment on their claims.

---

[1]By this Motion, Plaintiff seeks summary judgment on Defendant's affirmative defense that the MCA exemption applies to Waste Disposal Drivers who transported recyclable materials *intrastate.*

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to this Court's Scheduling Order, Plaintiffs represent that there is no genuine issue for trial for the following material facts. *See* ECF No. 99, ¶ H(1).

### A.    Defendant Is an  Employer Under the FLSA

Defendant jointly employed Plaintiffs as non-exempt Drivers within the meaning of 29 U.S.C. § 203(e). *See* Joint Employer Stip., attached as Exhibit 1; WastePro Job Posting, attached as Exhibit 2; Department of Labor ("DOL") FLSA-Overtime Violation Letter, attached as Exhibit 3; FordHarrison, LLP ("FordHarrison") Audit, attached as Exhibit 4, at p. 055506; ECF No. 143-1, 8:17–20 (Craigo, J. Depo.).

### B.    Defendant Pays Non-Discretionary Bonuses to Plaintiffs that Are Not Included in Their Regular Rate of Pay

Defendant offered an Annual Bonus (occasionally referred to as an Annual Performance Bonus, Performance Bonus, Perfect Performance Award, Safety Bonus and/or an Annual Safety Bonus) to all Drivers.[2] *See* ECF No. 158-1, 37:3–6 (S. Early Depo.); ECF No. 143-1, 14:18–25. Defendant also offered a Three-Year Bonus (occasionally referred to as a Three-Year Safety Bonus, a Driver Safety Performance Bonus, a Three-Year Performance Bonus, and/or a $10,000 Bonus) to Plaintiff and the Opt-In Plaintiffs who satisfied Defendant's pre-determined criteria. *See* ECF No. 158-1, 37:3–6. Plaintiffs had to meet specific

---

[2] Although this bonus went by multiple names, it addresses the bonus available to all employees at the end of the year, depending on their performance throughout the year. *See* ECF Nos. 143-1, 19:1–13; 145-1, 67:17–20.

criteria/requirements over the pre-determined time period (one or three years, respectively) to qualify for the Annual Bonus and Three-Year Bonus. *See* ECF No. 145-1, 59:5–61:5 (Harrison, J. Depo.); WastePro USA's Driver Performance Bonus [Three Year Performance Bonus] Criteria, attached as Exhibit 5; Waste Pro Employee Handbook, attached as Exhibit 6, at p. 55607. These bonuses rewarded Plaintiffs for working safely and according to Defendant's rules and regulations during their respective time periods. *See* Exhibit 5; WastePro USA's Safety Spotlight, attached as Exhibit 7; WastePro USA's Training Materials, attached as Exhibit 8.  In a strange turn of events, Defendant's ***now*** admit that they have intended to include the Annual Bonus in the calculation of Plaintiffs regular rate of pay since 2015—when the DOL instructed they were doing it incorrectly and fined them accordingly. *See* ECF No. 158-1, 56:5–68:18 (Early, S. Depo.). Unfortunately, Plaintiffs' payroll records establish that the DOL's instructions were never implemented. *See* Calvin Hunt's Exemplar Paystubs for a 1-Year Period, attached as Exhibit 12.

## C.    Defendant's FLSA Violations Are Willful and Not in Good Faith

Defendant has been audited by the DOL on multiple occasions. The DOL determined that not all bonuses were properly included in Defendant's Drivers' regular rates of pay. *See* Craigo/DOL Inspector Carlos Urrutia Email re Bonuses, attached as Exhibit 9; Craigo/DOL Inspector Robert Vaden Email re Overtime Calculations, attached as Exhibit 10. Likewise, in 2013, Defendant retained FordHarrison to audit its Human Resources Department—FordHarrison advised

Defendant that the "3-year safety bonus and annual bonuses must be included in [the] regular rate for purposes of calculating overtime" because it was required by the FLSA. *See* Exhibit 4, at p. 055506. After the DOL advised Defendant its pay practices violated the FLSA, Defendant acknowledged that the Annual Bonus should be included in the calculation for its Drivers' regular rates of pay. *See* Email from Craigo to ADP re Bonus Inclusion, attached as Exhibit 11. To this day, Defendant does not include either the Annual Performance Bonus or the Three-Year Performance Bonus in the Drivers' regular rate of pay for the purpose of overtime calculation. *See* ECF No. 158-1, 66:22–67:6; *see also* Exhibit 12.

## D.   Recyclables Transported Intrastate Are Not in the Flow of Interstate Commerce

Defendant services its clients by collecting materials set out as recyclables and transporting them to an available facility.  While some drivers crossed state lines a *de minimus* amount, many drivers only hauled recyclable materials intrastate. *See* ECF No. 145-1, 27:8–32:9, 35:5–36:9, 38:3–23 (discussing recycling in place for Georgia) (Jerry Harrison, Divisional Vice President of Georgia); ECF No. 146-1, 27:13–39:5 (discussing recycling in place for Mississippi) (Christopher Lockwood, Regional Vice President of Mississippi); ECF No. 142-1, 16:11–18:13 (discussing recycling in place for Alabama) (Richard Chancey, prior Division Manager for Mobile, Alabama Division); 159-1, 62:12–75:5 (discussing recycling in place for Louisiana) (Jesse Murphy, Divisional Vice President of Louisiana). When delivering to a recycling center not affiliated with WastePro

USA, Inc., Defendant had no knowledge of the future destination, if any, of the delivered recyclable materials. *See* ECF No. 145-1, 22:23–23:16, 27:13–30:10; 35:5–36:9, 38:3–23; ECF No. 146-1, 36:14–37:20; ECF No. 142-1, 18:11–13; ECF No. 159-1, 63:20–64:2, 70:1–11; 71:24–73:1, 74:4–8. Defendant has not produced any evidence supporting the application of the MCA exemption for any recycling facilities affiliated with, or owned by, WastePro USA, Inc.

## III.   STANDARD OF REVIEW

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no genuine issue of material fact." *Margolis v. Pub. Health Tr. Of Miami-Dade Cty.*, 89 F. Supp. 3d 1343, 1348 (S.D. Fla. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

> An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. It is 'material" if it might affect the outcome of the case under the governing law. In addition, when considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party.

*Id.* quoting *Anderson*, 477 U.S. at 254–55.

If the moving party bears the burden of proof at trial, it must establish all essential elements of the claim or defense in order to obtain summary judgment.

*Id.* (citing *U.S. v. Four Parcels of Real Prop. in Greene & Tuscaloosa Counties*, 941 F.2d 1428, 1438 (11th Cir. 1991). The moving party "'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'" *Id.* "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.*

"[I]f the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense." *Id.* In this circumstance, the "moving party may discharge its burden . . . by showing the Court that 'there is an absence of evidence to support the nonmoving party's case.'" *Id.* at 1349. The burden then shifts to the non-moving party who bears the burden of proof must to cite "to particular parts of materials in the record" or show "that the materials cited do not establish the absence or presence of a genuine dispute." *Id.* (citing FED. R. CIV. P. 56(c)(1)). "Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. *Id.* If the record presents factual issues, the Court must deny the motion and proceed to trial." *Fagundez v. Louisville Ladder, Inc.*, No. 10-23131-CIV, 2011 WL 6754089, at *1 (S.D. Fla. Dec. 22, 2011), *report and recommendation adopted*, No. 10-23131-CV, 2012 WL 12844303 (S.D. Fla. Jan. 19, 2012) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

## IV.   ARGUMENT & AUTHORITIES

### A.   DEFENDANT MISCALCULATED PLAINTIFFS' REGULAR RATE OF PAY BY EXCLUDING NON-DISCRETIONARY BONUSES

Defendant offers all of its Drivers two performance-based bonus opportunities—(1) the Annual Performance Bonus and (2) the Three-Year Performance Bonus, also referred to as the $10,000 Bonus or the Three-Year Safety Bonus.[3] Both are non-discretionary and must be included in the regular rate of pay.[4]

### 1.   The Annual Performance Bonus and the Three-Year Safety Bonus

The Annual Performance Bonus is paid to all Drivers based on their seniority with the company ($250 for every year with the company, with a $2,500 maximum amount after ten [10] years) and their performance throughout the year. *See* ECF No. 143-1, 13:10–13 (recognizing the Annual Performance Bonus provides for

---

[3] There are additional bonuses that should be included in the regular rate of pay, but for the purpose of this Motion, Plaintiffs address only the Annual Performance Bonus and the Three-Year Performance Bonus.

[4] Now recognizing the magnitude of its error, Defendant may attempt to avoid this clear-cut liability by arguing that Plaintiff did not sufficiently plead that Defendant's failure to include the non-discretionary bonuses at issues in the calculation of their regular rate of pay caused a miscalculation of their regular rate of pay. Any such argument, however, would be frivolous—Plaintiff Blandon clearly plead that Defendant "improperly calculated Plaintiff and the Putative Class Members' regular rate resulting in further miscalculation of Plaintiff and the Putative Class Members' overtime pay." *See* ECF No. 1, ¶ 29. Plaintiffs' pleading is broad enough to encompass this miscalculation claim because it gave Defendant fair notice of the type of FLSA claims at issue. Binding Eleventh Circuit precedent clearly recognizes that "[a] complaint need not specify in detail the precise theory giving rise to recovery." *See Plumbers & Steamfitters Local No. 150 Pension Fund v. Vertex Const. Co.*, 932 F.2d 1443, 1448 (11th Cir. 1991) (recognizing that Rule 8(a) controls, and determining that a complaint need only give notice of the claims asserted and the grounds on which it rests). Defendant attempted a similar argument in *Wright v. Waste Pro USA, Inc., et al.*, No. 0:19-cv-62051-KMM, ECF No. 252 (S.D. Fla. Aug. 17, 2021) (finding that the plaintiff's claim regarding bonuses and the regular rate of pay is included in the complaint).

$250.00 a year, up to a maximum annual amount of $2,500); ECF No. 145-1, 60:6–14; Drivers who meet certain set criteria are entitled to the Annual Performance Bonus at the end of the year. *See* ECF No. 143-1, 13:14–14:13 (Craigo, J. Depo.); ECF No. 145-1, 56:4–57:9, 59:5–61:5 (Harrison, J. Depo.); ECF No. 159-1, 33:9–21 (Murphy, J. Depo); ECF No. 146-1, 46:9–48:3 (Lockwood, C. Depo.). This criterion generally includes requirements that Drivers be free from at-fault accidents, maintain good attendance, maintain a clean vehicle, have no customer complaints, and follow Defendant's policies and procedures. *See* ECF No. 159-1, 33:4–33:8 (Murphy, J. Depo); ECF No. 146-1, 47:12–16 (Lockwood, C. Depo.); ECF No. 60:1–5 (Harrison, J. Depo.).

Similarly, Drivers can also earn a Three-Year Performance Bonus based on the same factors as the Annual Performance Bonus—the only difference being the applicable period is  three years.



*See* Exhibits 5, 6 at p. 55607, 7 and 8 at 55896–98; ECF No. 158-1, 37:3–6 (Early, S. Depo.); ECF No. 145-1, 60:1–5 (Harrison, J. Depo.). In exchange for an exemplary record spanning three years, Drivers are entitled to a non-discretionary

$10,000.00 bonus. *Id.* Defendant uses this Three-Year Performance Bonus to incentivize Plaintiffs' performance. *See* Exhibits 5, 6 at p. 55607, 7 and 8 at 55896–98.

The pertinent issue under the FLSA—and in this case—is whether the bonuses are discretionary or non-discretionary. Discretionary bonuses qualify for exclusion from the regular rate, while non-discretionary bonuses must be included in an employee's regular rate of pay. *See* 29 U.S.C. § 207(e); 29 C.F.R. §§ 778.208–11. Indeed, the FLSA requires that "***all*** remuneration for employment, paid to or on behalf of the employee" with limited exceptions, be included in their regular rate of pay for the purpose of overtime calculation. *See* 29 U.S.C. § 207(e) (emphasis added). The employer—Defendant herein—bears the burden of establishing that a payment is exempt from the regular rate. *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 209 (1966)). "Bonuses which do not qualify for exclusion from the regular rate as one of these types must be totaled in with other earnings to determine the regular rate on which overtime pay must be based." 29 C.F.R. § 778.208. Section 207(e)(3)(a) explicitly sets forth which bonuses are excludable from the regular rate as:

> (a) both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly

29 U.S.C. § 207(e)(3)(a).

## 2.    The Discretionary Bonus Exclusion—29 U.S.C. § 207(e)(3)(a)

Defendant must prove that the bonuses at issue are discretionary, and thus excluded from inclusion in the regular rate, to avoid liability under the FLSA. As noted by the United States Court of Federal Claims, Section 207(e)(3)(a) contains four requirements for bonuses to be deemed discretionary: "(1) '[t]he employer must retain discretion as to whether the payment will be made;' (2) '[t]he employer must retain discretion as to the amount;' (3) '[t]he employer must retain discretion as to the payment of the bonus until near the end of the period at which it covers; and' (4) '[t]he bonus must not be paid pursuant to any prior contract, agreement, or promise.'" *Abbey v. U.S.*, 99 Fed. Cl. 430, 446 (Fed. Cl. 2011) (quotations omitted). Defendant must satisfy ***all*** four requirements for the bonuses at issue in this case to be deemed "discretionary" and thus excludable from the calculation of the Plaintiffs' regular rate of pay. *Hensley v. Carson Dev., Inc.*, No. 18-CV-02651-JLK-KLM, 2020 WL 6384648, at *6 (D. Colo. July 31, 2020). Plaintiffs address each of these requirements in turn.

### a.    *Discretion as to whether the payment will be made.*

Defendant has no discretion whether to pay the bonuses according to company policy—that is, if its Drivers had not been disqualified as a result of an infraction, then they received their bonuses as promised. If it was earned, it was paid. This is clear from the testimony of Defendant's Regional Vice President of Georgia, Jerry Harrison:

11

```
15       Q    Have you ever rejected someone for an annual
16  bonus who was eligible for it?
17       A    No.  Why would I?
18       Q    Again, that would be because they had met the
19  criteria?
20       A    Well, but you said they're eligible.
21       Q    I know.
22       A    If you don't meet the criteria, you're not
23  eligible.
24       Q    If they meet the criteria --
25       A    They get it.
```

ECF No. 145-1, 60:15–25 (Harrison, J. Depo.); ECF No. 146-1, 47:9–11 (same) (Lockwood, C. Depo); ECF No. 142-1, 30:12–19 (same) (Chancey, R. Depo.); ECF No. 159-1, 33:22–35:2 (same) (Murphy, J. Depo); *see also* Exhibits 5–8 (setting forth the necessary criteria that must be met to earn the bonus).

> b.    *Discretion as to the amount.*

Likewise, Defendant had no discretion as to the amount of the Three-Year Performance Bonus—if a Driver meets the criteria, then they receive their $10,000.00 bonus. *See id.* While the Annual Performance Bonus allowed Defendant to deduct portions of the bonus for infractions throughout the year, the maximum amount was always predetermined. *See* ECF No. 159-1, 36:21–37:22. In other words, while both the Three-Year Performance Bonus and the Annual Performance Bonus were Plaintiffs' to lose, they could still receive a portion of the Annual Bonus if not *all* criteria were satisfied. *See id.* While Defendant may have been able to deviate downward in the event a Waste Disposal Driver had a blip, they could not deviate from the promised amount if all criteria were satisfied.

In *Sliwinski*, Judge Whittemore from the Middle District of Florida analyzed a defendant's failure to include safety bonuses paid to its drivers in their regular rates of pay for the purpose of calculating their overtime compensation. *See generally Sliwinski v. EZ Sweep Corp.*, No. 8:07-CV-158-T-27MSS, 2008 WL 11385513 (M.D. Fla. July 2, 2008). There, the defendant paid quarterly safety bonuses of a set amount if there were no infractions or violations by its drivers. *Id.* Any infractions or violations of company policy would then cause amounts to be deducted from that set amount. *See id* at *4. According to the defendant's company policy, there were certain set deductions in addition to discretionary penalties that would affect the amount of the bonus. *See id.*   The court determined that "[a]lthough [the d]efendant purported to retain discretion as to the penalties applied (i.e., the amount of the bonus), the employer must retain discretion as to both the amount of the bonus and the fact of payment in order to qualify the bonus under the statutory exclusion." *Id.* (quoting 29 U.S.C. § 207(e)(3)) (citing 29 C.F.R. § 778.211(b); *Gonzalez v. McNeil Techs., Inc.*, No. 1:06-cv-204, 2007 WL 1097887, at *4 (E.D. Va. Apr. 11, 2007) (noting that the issue "is whether it has been promised to the employee, even if that promise is attended by certain conditions")).  Here, 100% of the amount of the bonuses at issue were promised to Defendant's employees—a promise Defendant was required to (and did) keep—if Defendant's requirements were met. *See* ECF No. 145-1, 60:15–25 (Harrison, J. Depo.); ECF No. 146-1, 47:9–11 (Lockwood, C. Depo); ECF No. 142-1, 30:12–19 (Chancey, R. Depo.); ECF No. 159-1, 33:22–35:2 (Murphy, J. Depo.).

     c.     *Defendant authorized bonus payments near the end of the pay period in which they were due.*

Although Defendant lacked discretion as to the amount and timing of the bonuses at issue, Defendant did provide final authorization wherein they identified those entitled to bonus payments near the end of the applicable bonus period.

     d.     *The bonuses were promised to Drivers for good performance.*

Finally, Defendant must show that the bonuses were not paid pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly. 29 U.S.C. § 207(e)(3).

Not only was the Three-Year Safety Bonus specifically promised in Defendant's handouts, Plaintiffs were told that they would receive these bonuses as long as they satisfied certain pre-determined parameters. *See* Exhibits 5, 6 at p. 55607, 7 and 8 at 55896–98; ECF No. 145-1, 60:15–25 (Harrison, J. Depo.); ECF No. 146-1, 47:9–11 (Lockwood, C. Depo); ECF No. 142-1, 30:12–19 (Chancey, R. Depo.); ECF No. 159-1, 33:22–35:2 (Murphy, J. Depo.).

Moreover, Plaintiffs did receive their bonuses when they were earned, according to Defendant's policies. *See* ECF No. 145-1, 60:15–25 (Harrison, J. Depo.); ECF No. 146-1, 47:9–11 (Lockwood, C. Depo); ECF No. 142-1, 30:12–19 (Chancey, R. Depo.); ECF No. 159-1, 33:22–35:2 (Murphy, J. Depo). *See also Walling v. Richmond Screw Anchor Co.*, 154 F.2d 780, 784 (2d Cir. 1946) ("[T]he undenied, crucial fact here is that in fact [bonuses] were regularly paid. Although the employees knew they could not legally compel the company to make those

payments, no one can doubt that the employees assumed that, in the normal course of events, the employees would receive them. That seems to us to be enough to constitute them part of 'the regular rate at which' the men were employed"); *Chao v. Port City Group*, No. 1:04-CV-609, 2005 WL 3019779, at *3 (S.D. Mich. Nov. 10, 2015) ("any bonus which is promised to employees upon hiring . . . would not be excluded from the regular rate") (quoting 29 C.F.R. § 778.211(c)); ECF No. 204-3, 33:6–12.

Because Defendant has not satisfied three of the four requirements for the bonuses to be deemed discretionary, the bonus payments do not qualify for the exception described in 29 U.S.C. § 207(e)(3) and must be included in the regular rate of pay. There are no issues of material fact regarding this issue, and the matter can be decided as a matter of law.

### 3.    The Impact of 29 C.F.R. § 778.211

The DOL's regulations, codified at 29 C.F.R. § 778.21 (which explains discretionary bonuses in more detail) further supports a finding that the bonuses here do not qualify as discretionary and they should be included in the regular rate of pay. Consistent with 29 U.S.C. § 207(e)(3), 29 C.F.R. § 778.211(b) states that in order to qualify as an exclusionary bonus:

> the employer must retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid. The sum, if any, to be paid as a bonus is determined by the employer without prior promise or agreement. The employee has no contract right, express or implied, to any amount. If the employer promises in advance to pay a bonus, he has abandoned his discretion with regard to it.

Indeed, "[b]onuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay." 29 C.F.R. § 778.211(c). "Most attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category; in such circumstances they must be included in the regular rate of pay." *Id*. **In fact, the DOL already told Defendant these bonuses were not excludable from the calculation of the regular rate of pay**. *See* Exhibits 9–11.

Defendant failed to carry its burden to exclude Plaintiffs' Annual Performance Bonus and Three-Year Performance Bonus from the regular rate of pay and they do not qualify for any statutory exclusion. *See also* 29 C.F.R. § 778.211(c) (providing that "[b]onuses for quality and accuracy of work . . . must be included in the regular rate of pay"). What is more, Defendant ***now*** acknowledges that the Annual Bonus—if not also the Three-Year Bonus—is required to be included in the calculation of Plaintiffs' regular rate of pay. *See* ECF No. 158-1, 56:5–68:18[5] (Early, S. Depo.); Exhibit 11.  As such, this Court should find

---

[5] It should be noted that Ms. Early's testimony, as discussed in the deposition, changed drastically after Plaintiff Anthony Wright filed his Motion for Partial Summary Judgment, on August 6, 2021, in the District Court for the Southern District of Florida, case no.:19-cv-62051-KMM, [ECF No. 234] arguing similarly, that Defendant acted willfully by failing to include the annual and three year bonuses in the regular rate.  Miraculously, after that motion was filed, Defendant located one email, without more, that purports to direct ADP to include bonuses in the overtime calculation.  As noted throughout, despite production of that one email, Defendant failed to actually include the Annual Bonus and the Three Year Bonus in the regular rate, and has utterly

Defendant has not, as a matter of law, met its burden to show these bonuses were discretionary, and therefore capable of exclusion from the regular rate, within the meaning of 29 U.S.C. § 207(e)(3).

**B.     LIQUIDATED ("DOUBLE") DAMAGES & THE 3-YEAR STATUTE OF LIMITATIONS ARE MANDATED—DEFENDANT'S VIOLATIONS WERE WILLFUL AND NOT IN GOOD FAITH**

### 1.    Liquidated Damages

Under the FLSA, "[a]ny employer who violates the provisions of section 215(a)(3) . . . ***shall*** be liable for . . . the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (emphasis added). "An employer seeking to avoid liquidated damages bears the burden of proving both good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir.1987); *see also Allen Board of Public Educ. For Bibb County*, 495 F.3d. 1306 (11th Cir. 2007). "In other words, liquidated damages are mandatory absent a showing of good faith." *Id.; see also Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1566 (11th Cir. 1991). The determination of whether an employer acted in good faith has both a subjective and objective component—the subjective component refers to the employer's actual belief and the objective component measures the reasonableness of the employer's belief. *See Dybach*, 942 F.2d at 1566; *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464,

---

failed to produce any evidence to support its good faith defense on this issue.  The proof is in the payment records.

469 (5th Cir.1979) (recognizing the objective component appears to "require[ ] some duty to investigate potential liability under the FLSA")

To establish "good faith," a defendant must produce "plain and substantial evidence of ***at least*** an honest intention to ascertain what the Act requires and to comply with it." *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58 (2nd Cir. 1997) (rejecting the defendant's argument that it did not purposefully violate the provisions of the FLSA because it was not sufficient to establish that it acted in good faith) (emphasis added). Indeed, "good faith" in this context requires more than ignorance of the prevailing law or uncertainty about its development—it requires that an employer first take active steps to ascertain the dictates of the FLSA, and then move to comply with them. *Id.*

On the other hand, a plaintiff may show he or she is entitled to extend the statute of limitations from two years to three years upon a finding that the defendant's actions were willful. *See* 29 U.S.C. § 255(a). A violation of the FLSA is "willful" if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988).

Here, the uncontroverted evidence establishes that Defendant's own counsel and the DOL advised them that the Annual Performance Bonus and the Three-Year Safety Bonus needed to be included in the Driver's regular rates of pay. *See* Exhibits 4, 9–11; ECF No. 158-1, 68:10–17 (Early, S. Depo.). Defendant hired experienced

wage and hour counsel, FordHarrison[6], to perform a complete audit of its systems and pay practices. *See* Exhibit 4, pg 055506. As part of that audit, FordHarrison advised Defendant that its Three-Year Safety [Performance] Bonus and its Annual Bonuses **_must_** be included in the regular rate of pay. *See id.* An excerpt of that audit is below:

> Bonuses:  Waste Pro's weekly safety bonuses must be attributed to the weeks in which they were earned, as required by the FLSA.  For purposes of calculating overtime, an employee who earns a $50 bonus in each of two weeks during the pay period must have $50 attributed to each week, separately, when calculating his regular rate.  In other words, the $100 total may not be attributed to either week one or week 2 of the pay period.  Alternatively, and this is our preferred solution, daily and weekly bonuses may be collapsed into the day rates of employees.  This will serve to increase the wages of day rate employees subject to these bonuses, improve morale, and also reduce the risk associated with the chilling effect the bonuses have on reporting practices related to injuries and accidents.  Additional discussion regarding safety bonuses can be found in the safety section of this report.
>
> Waste Pro's 3-year safety bonus, annual bonuses, quarterly bonuses, Franklin bonuses and "Waste Pro Bucks" bonuses must be included in regular rate for purposes of calculating overtime, as required by the FLSA.  The applicable rule requires that non-discretionary bonuses include an overtime component.  Employers cannot avoid this result by characterizing a bonus as discretionary where the bonus is paid as an incentive.

*See id.* at 055506.  The Ford Harrison audit went on to explain that the "only alternative that complies with wage and hour laws is to attribute the bonus to the weeks over which it was earned, recalculating overtime pay with the bonus added into the regular rate for those workweeks, and paying an additional amount on account of overtime due on the bonus." *Id.* at 055506.

As discussed *supra*, the DOL likewise instructed Defendant that its policies violated the FLSA. *See* Exhibits 9–10. Indeed, the DOL has investigated Defendant

---

[6] https://www.fordharrison.com/#AboutUs.

on two separate occasions and, on both occasions, advised it that the bonuses at issue needed to be included in the Drivers' regular rates of pay. *See id.*

Judith Craigo, Defendant's Director of Payroll and System Automation, testified that the Three-Year Safety/$10,000 Bonus has never been included in the regular rate. *See* ECF No. 143:1, 11:16–24. Ms. Craigo's sworn testimony proves she has received, and disregarded, DOL instructions and the advice of counsel— indeed, Ms. Craigo was told, directly by DOL Investigator Carlos Urrutia, that the bonuses were required to be included in the regular rate.



*See* Exhibit 9. Curiously, Ms. Craigo previously testified under oath that it was ***her*** opinion that the Annual Performance Bonus need not be included in the regular rates of pay. *See* Judith Craigo Deposition Transcript from *Wright v. Waste Pro USA, Inc. et al.,* No. 19-cv-52051-KMM (S.D. Fla.) at 30:19-31:11, attached as Exhibit 13. Again, Ms. Craigo's "opinion" is meaningless (flat out wrong) and

contrary to the information provided ***to her*** by the DOL. As DOL Investigator Urrutia correctly advised Ms. Craigo, "the ***only*** bonus you would not include is if the company provides a bonus for Christmas, any other holiday, birthday's, or any events ***not related to the performance*** of the worker." *Id.* (emphasis added). Likewise, the Ford Harrison Audit advised Defendant of its FLSA violations as they pertained to the bonuses and provided a roadmap to fix it—unfortunately Defendant failed to heed and implement the advice of its counsel. *See* ECF No. 158-1, 68:10–17 (Early, S. Depo.)

Despite Defendant's unsupported and baseless "opinions" otherwise, the fact that Defendant had previously been instructed by both the DOL and its ***own*** counsel that these [non-discretionary] bonuses needed to be included in the regular rate—and still failed to do so—forecloses any argument of good faith, and evidences an intentional disregard that rises to the level of willfulness. *See* Exhibit 8 (email advising annual bonus needed to be included in the overtime equation); *see also* Exhibit 9 (advising annual performance bonus needed to be included); *McLaughlin*, 486 U.S. at 135; *Dybach*, 942 F.2d at 1566.

Defendant has wholly failed to provide ***any*** evidence that they acted in good faith or that they had reasonable grounds to believe the exclusion of the Annual Performance Bonus and Three-Year Safety Bonus from the regular rate of pay was legal pursuant to the FLSA. *Dybach*, 942 F.2d at 1566. Instead, the documents produced by Defendant established it had been repeatedly instructed to include such bonuses in the regular rate of pay, which it willfully ignored. At best, after the

21

close of discovery and after Plaintiffs' Counsel had deposed Ms. Craigo in this matter, Defendant "located" a new email chain purporting to show that these bonuses *have* been included in the calculation of Plaintiffs' regular rates of pay. *See* Exhibit 11. Unfortunately, the pay records contradict Defendant's new assertion—these bonuses are still not included in the regular rate. *See* Exhibit 12 (exemplar pay records over one year, proving there was no recalculation after the Annual Bonus is awarded). As such, this Court should grant summary judgment on this issue.

## C.   THE MOTOR CARRIER ACT EXEMPTION DOES NOT APPLY

Defendant asserts that the Motor Carrier Act ("MCA") applies to exempt Plaintiffs from the overtime provisions of the FLSA. The determination of whether employees are exempt from the overtime and minimum wage requirements of the FLSA involves a question of fact. *Hodgson v. Colonnades, Inc.*, 472 F.2d 42, 47 (5th Cir. 1973). The "ultimate decision whether an employee is exempt is a question of law." *Smith v. City of Jackson, Miss.*, 954 F.2d 296, 298 (5th Cir.1992). The burden of showing that the employer is entitled to use the exemption lies with the employer. *See Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1156 (11th Cir. 2008).

"The applicability of the motor carrier exemption 'depends both on the class to which his employer belongs and on the class of work involved in the employee's job.'" *Abel v. S. Shuttle Servs., Inc.*, 631 F.3d 1210, 1213 (11th Cir. 2011) (quoting 29 C.F.R. § 782.2, outlining the requirements for the MCA exemption). "There are

two requirements for an employee to be subject to the motor carrier exemption: (1) his employer's business must be subject to the Secretary of Transportation's jurisdiction under the MCA; and (2) the employee's business-related activities must directly affect the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act. *Walters v. American Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1227 (11th Cir. 2009).

Plaintiffs do not concede the first requirement is met since Defendant has produced no evidence during the course of this matter that shows, unequivocally, the Defendant is subject to the authority of the Secretary of Transportation. Defendant maintains the burden to show that the Secretary has authority over them.  Further, to the extent drivers actually crossed state lines, Defendant has failed to show any trips across state lines were anything more than *de minimis* in terms of frequency or revenue to the company. With respect to the second prong, the question is whether Plaintiffs engage in activities of such a character that directly affect the safety of operation of motor vehicles in transportation on public highways of property in interstate commerce, or whether the employees transport property in interstate commerce.  They clearly do not.

## 1.   Practical Continuity of Movement in Interstate Commerce Is Required

A purely intrastate carrier may meet the interstate commerce requirement of the MCA exemption "if the goods being transported within the borders of one

State are involved in a 'practical continuity of movement' in the flow of interstate commerce." *Ehrlich v. Rich Prod. Corp.*, 767 F. App'x 845, 848 (11th Cir. 2019) (quoting *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943)). Whether intrastate transportation is involved "in the flow of interstate commerce" is in turn determined by reference to "the intention formed prior to shipment, pursuant to which the property is carried to a selected destination by a continuous or unified movement." *Project Hope v. M/V IBN SINA*, 250 F.3d 67, 74 (2d Cir. 2001) (internal quotation marks and citations omitted); *Ehrlich*, 767 F. App'x at 848; *see also Atl. Coast Line R. Co. v. Standard Oil Co. of Kentucky*, 275 U.S. 257, 269 (1927) (determining continuity of transportation by examining whether the destination of the goods "is arranged for or fixed in the minds of the sellers"). Thus, when determining whether intrastate shippers qualify for the MCA exemption, courts focus on whether the goods' final destination was known ***at the time they were shipped***. *Walling*, 317 U.S. at 568.

To show the "continuous stream," the test is whether there is a "'practical continuity of movement' between the intrastate segment and the overall interstate flow." *Walters v. American Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1229 (11th Cir. 2009). The shipper's intent, or Defendant's intent here, must be "fixed and persisting" at the time of shipment. *Williams v. Kenco Logistic Servs., Inc.*, No. 809-CV-709-T-26MAP, 2010 WL 2670852, at *3 (M.D. Fla. July 2, 2010) (quoting 29 C.F.R. § 782.7(b)(2); (citing *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 223–24 (2d Cir. 2002)). This intention "can be 'determined by reference to

the intended final destination' of the transportation" when the shipper knew the final destination "at the time the transportation commenced." *Bilyou*, 300 F.3d at 223–24 (citing *Project Hope*, 250 F.3d at 74). "Mere contemplation that property may be further shipped from where it was delivered does not amount to an original, persisting intention of a shipper that property is, in fact, to be shipped to another place." *Veney v. John W. Clarke, Inc.*, 28 F. Supp. 3d 435, 443 (D. Md. 2014).

The 2016 version of the DOL Field Operations Handbook utilizes a three-factor test to determine whether the shipper has a fixed and persistent transportation intent beyond the terminal storage point at the time of shipment. *See* U.S. Dep't of Labor, FIELD OPERATIONS HANDBOOK § 24d02(a) (Rev. 690, May 23, 2016); *see also Noll v. Flowers Foods Inc.*, 442 F. Supp. 3d 345, 359 (D. Me. 2020) (relying on the DOL's Field Operations Handbook in determining fixed and persistent intent). "It has been specifically found that there is ***no*** fixed and persisting intent where the following three conditions are present: (1) at the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific destination[;] (2) the terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated[; and] (3) transportation in the furtherance of this distribution within the single state is specifically arranged only after sale or allocation from storage[.]"); *see also* 29 C.F.R. § 782.7(b)(2). The Eleventh Circuit has not required that all three of these factors be met to conclude that a fixed and

persisting intent is absent. *Cruz v. Southern Waste Systems, LLC*, No. 9- 21756-CIV, 2010 WL 309016, at *3 (S.D. Fla. Jan. 25, 2010).

> a. *There can be no fixed and persisting intent at the time of pick-up or delivery because the final destination of the recyclable waste is unknown by Defendant at the time of delivery.*

Here, there can be no fixed and persisting intent because the pick-up and delivery of recyclable waste is a service provided by Defendant to its clients—municipalities, companies, and private individuals—to remove waste and deliver it to the appropriate location, whether it be a landfill, a Material Recycling Facility ("MRF"), or some other disposal site. Defendant has no "intent" as to the recyclable waste beyond delivery to its intended destination—the landfill, MRF, or some other disposal site. Defendant's Regional Vice President for Georgia, Jerry Harrison, testified as follows in response to a question about the final destination of the recyclable materials:

```
 4      Q    Do you know what happens to the recycling once
 5  it gets delivered there?
 6      A    We don't -- we don't deliver, so I can only
 7  assume.
 8      Q    But from your perspective, from Waste Pro's
 9  perspective, what gets delivered to that facility, you
10  don't know what happens to it?
11      A    Oh, no.  Once we put it on the floor, we
12  leave.
13      Q    That's up to Republic to deal with?
14      A    That's up to them.
15      Q    Do you know what Republic does with it?
16      A    I don't know what they do with it.
```

ECF No. 145-1, 23:4–16. Mr. Harrison also confirmed that he did not know what happened to the recyclable materials after disposing of them at Atlanta Recycling

Group ("ARG"), despite the fact that ARG appears to be an affiliated entity of WastePro USA, Inc. *See id.* at 28:16–30:21. Likewise, Defendant's Regional Vice President for Mississippi, Christopher Lockwood, and Defendant's Divisional Vice President for Louisiana, Jesse Murphy testified similarly:

```
13    Q.   And at the other facilities that we've touched
14 on and talked about here, is it fair to say that Waste
15 Pro doesn't have any involvement in the recycling
16 material once they are delivered to those facilities?
17    A.   No, they don't.
18    Q.   So where they ultimately end up, you being
19 Waste Pro and being the regional manager, what --
20    A.   No idea.
```

ECF No. 146-1, 37:13–20 (Lockwood, C. Depo.).

```
4    Q.  Okay.  And I think you've already testified
5 that after the recyclable materials are deposited at the
6 recycling centers, you don't know what happens to it
7 beyond that, correct?
8    A.  That's correct.
```

ECF No. 159-1, 74:4–8. Finally, Richard Chancy, the prior division manager for Mobile Alabama also confirmed that he is unaware what happens to the recyclables after they are delivered to the recycling facility. *See* ECF No. 146-1, 16:11–18:13. Defendant's participation in commerce is fulfilled after the recyclable waste is delivered. Indeed, the applicable factual circumstances, as set forth in the evidence obtained during discovery, are wholly distinguishable from cases applying the MCA exemption.

In *Walling*, the Supreme Court held that intrastate shippers delivering goods that originated out of state qualified for the MCA exemption where the goods

were "ordered pursuant to a pre-existing contract or understanding with the customer." *Id.* There, the Court explained that "[t]he contract or understanding pursuant to which goods are ordered, like a special order, indicates where it was intended that the interstate movement should terminate." *Id.* at 569. The Supreme Court contrasted deliveries based on "prior orders or contracts" with deliveries "based on anticipation of needs of specific customers," holding that the latter constitutes interstate commerce within the meaning of the MCA ***only*** when the evidence demonstrates with "particularity" that the goods were meant for specific customers, as opposed to "goods acquired and held by a local merchant for local disposition." *Id.* at 570 (emphasis added). The MCA exemption therefore does not apply when goods are "for future delivery to customers yet to be identified" or "where the final destination of any shipment is not decided until after the goods had come to rest in the warehouse." *Southern Pac. Transp. Co. v. Interstate Commerce Comm'n*, 565 F.2d 615, 618 (9th Cir.1977).

Here, Defendant has provided evidence that the recyclable waste is delivered to recycling facilities where it is then sorted, mixed with recyclable waste from other carriers, baled, and eventually (maybe) sold to third parties. ECF No. 146-1, 18:14–20:20 (Chancy, R. Depo.); ECF No. 159-1, 63:16–64:11 (Murphy, J. Depo.); ECF No. 146-1, 35:1–36:5 (Lockwood, C. Depo.). Mr. Lockwood also testified that Defendant does not have a final destination set for the recyclables at its own recycling center.

```
2      Q.   But that would be done after the recycling
3    material comes in and sorted and then baled into the new
4    bale?
5      A.   That would be done after.  After it was sorted?
6      Q.   Right.
7      A.   Not necessarily.  A lot of times, you know, you
8    want to source your buyers and stuff so, you know, when
9    you're in the recycling business, you are sourcing
10   buyers constantly.  You know, it's a commodity.  Someone
11   might offer a hundred and five for a bale of cardboard
12   when someone is only offering 95, so you kind of keep an
13   open line of communication there.
14     Q.   To make sure I understand, when you say
15   sourcing buyers, you're always talking to buyers to see
16   who's out there and who's interested in potential
17   product?
18     A.   Yeah, um-hmm.
19     Q.   But at the time the material is coming in, you
20   don't necessarily know where that bale is going to
21   ultimately end up?
22     A.   No, uh-uh.
```

ECF No. 146-1, 36:2–22 (discussing WastePro USA, Inc.'s former recycling facility in Gulfport, Mississippi).

Where, when, and to whom these new "bales" are sold is unknown.[7] As such, Defendant has failed to establish that these newly baled recycled goods were intended for specific customers pursuant to pre-existing contracts, as required by *Walling*. *See id.*; 317 U.S. at 568; *Southern Pac. Transp. Co.*, 565 F.2d at 618. Defendant has simply failed to establish they maintained a fixed and persisting transporting intent "at the time the transportation commenced." *See Bilyou*, 300 F.3d at 223–24. This is critical because it is the ***shipper's*** intent—here,

---

[7]Defendant did produce documents showing recycling tickets and receipts. These documents, however, do not provide the necessary "where, when, and to whom" necessary to establish a fixed and persisting transporting intent at the time the transportation commenced. *See Mena*, 2009 WL 3004009, at *7.

Defendant's intent—at the time of shipment that controls for purposes of the MCA. *See Mena v. McArthur Dairy, LLC,* No. 09-12657, 2009 WL 3004009, at *7 (11th Cir. Sept. 22, 2009)(citing C.F.R. § 782.7(b)(2)).

In *Bilyou*, the Second Circuit analyzed the importance of the shipper's intent at the time the transportation commenced. *See* 300 F.3d at 223–24. The Second Circuit affirmed the district court's holding, based on the following rational:

> Bilyou argues that [the defendant's] handling of the empties is not part of an interstate shipment because it is Mid–Hudson, not [the defendant], that processes the empties and arranges for their out-of-state shipment. **<u>Assuming Bilyou's argument might be valid if Mid–Hudson were an independent entity that purchased the empties at arm's length from [the defendant]</u>**, that is not the case. Mid–Hudson and [the defendant] are related entities and are not in an arm's length relationship to one another. They have common owners, share the same property, and arrange with one another the allocation of the benefits and burdens of handling the empties. For example, as to the returnable and refillable containers, while Mid–Hudson packages and loads them onto trailers, it is [the defendant] that receives a credit from Anheuser–Busch for their return.
>
> Mid–Hudson neither purchases those refillable empties from [the defendant], nor does it receive payment from AB. The district court found that AB "sends [the defendant] 'preprinted invoices' for the shipment of returns; the amount [the defendant] is credited for the return is exactly the same as the amount [the defendant] pre-paid for deposits on the same product when it was originally shipped for distribution." These invoices designate [the defendant] as the sender of the refillable containers. Furthermore, the refillable empties are transported from Mid–Hudson's facility to out-of-state breweries by a third-party shipper with whom [the defendant] has contracted. Thus, from the moment it receives these products, [the defendant] has a "fixed and persisting intent" to return the refillable containers to out-of-state breweries.

*Bilyou*, 300 F.3d at 224–25 (emphasis added) (internal citations omitted).

Here, unlike in *Bilyou*, the vast majority of the recyclable waste at issue was sold to third-party recycling centers that charged Defendant to accept the

materials. *See* ECF No. 146-1, 34:3–35 (discussing having to pay $150 a load to dispose of recyclables). This wholly negates a finding that the goods were involved in a practical continuity of movement in the flow of interstate commerce because there can be no "fixed and persisting intent" in these circumstances. *See id.*; *see also Raymond v. Mid-Bornx Haulage Corp.*, No 15 Civ. 5803 (RJS), 2017 WL 1251137, at *5–7 (S.D.N.Y. Mar. 31, 2017) (refusing to apply the MCA exemption because the defendant had "no involvement with, control over, or monetary interest in what happens to waste after it is transported to the transfer stations"); (discussing *Veney*, 28 F. Supp. 3d at 444 (determining that the defendant waste disposal company did not meet its burden to show "fixed and specific intent" to ship waste out of state, although the waste *was* ultimately shipped out of state, because the defendant "made no arrangements for what they dumped to be transported out of state") (discussing *Alice v. GCS, Inc.*, No. 05 C 50132, 2006 WL 2644958, at *5 (N.D. Ill. Sept. 14, 2006) (determining that because the defendant could only prove intent to transport waste to the transfer station, and the transfer station determined the final destination of the waste after it sorted, processed, and commingled the refuse with like-kind products and accumulated sufficient quantities of matter to constitute a full load "the continuity of movement of the original product" in interstate commerce was interrupted and the defendant did not qualify for the MCA exemption)).

Indeed, in factually similar cases addressing the recycling issue in the context of a hauling company, the overwhelming amount of case law supports a

finding that the MCA does not apply. *See Raymond*, 2017 WL 1251137, at *5–7; *Veney*, 28 F. Supp. 3d at 444; *Alice*, 2006 WL 2644958, at *5. However, in *Cruz v. Southern Waste Systems, LLC*, the Southern District of Florida does address the application of the MCA exemption to waste disposal drivers who hauled waste and recyclable goods intrastate. *See generally* 2010 WL 309016.  There, the district court analyzed deposition testimony from the three recycling facilities to which the plaintiffs delivered goods when reaching the conclusion that the goods at issue traveled through the continuous stream of commerce across state lines, for two of the three facilities. *See id.* at *5 (determining metal delivered to the metal recycling facility that shredded the metal prior to shipment was not in the stream of commerce because the shredding "transforms it into a new commodity"). However, in making that determination, the Court had significantly more evidence before it regarding the final destination of the goods at issue.  *Id.* at 4–5.

Here, Defendant has not produced sufficient evidence that it had a specific "intention formed prior to shipment, pursuant to which the property is carried to a selected destination by a continuous or unified movement." *See Project Hope*, 250 F.3d at 74; *Ehrlich*, 767 F. App'x at 848; *see also Atl. Coast Line R. Co. v. Standard Oil Co. of Kentucky*, 275 U.S. 257, 269 (1927). Moreover, the DOL has already specifically reviewed this issue and determined the MCA exemption did not apply to Defendant's Drivers and Defendant did not classify its recycle drivers as exempt. *See* Exhibit 3. There is no doubt that Plaintiffs here are non-exempt employees entitled to the protections of the FLSA.

## IV.   CONCLUSION

Because Defendant failed to meet its burden of proof on issues related to the exclusion of bonuses from the regular rate of pay, its "good faith" defense pursuant to 29 U.S.C. §§ 259 and 260, and the MCA exemption pursuant to 29 U.S.C. § 213, summary judgment is appropriate. Moreover, Defendant's willful disregard of the instruction from both the DOL and its own counsel to include the Annual Performance Bonus and the Three-Year Safety Bonus in Plaintiffs' regular rates of pay conclusively establishes that Plaintiffs are entitled to the three-year statute of limitations provided by 29 U.S.C. § 255(a).

Dated this 7th day of September, 2021.

Respectfully submitted by:

**ANDERSON ALEXANDER, PLLC**

*/s/ Clif Alexander*
**Clif Alexander, Esq.**
Texas Bar No. 24064805
clif@a2xlaw.com
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284
Admitted *Pro Hac Vice*

**Austin W. Anderson, Esq.**
Texas Bar No. 24045189
austin@a2xlaw.com
Admitted *Pro Hac Vice*

**MORGAN & MORGAN, P.A**.

**C. Ryan Morgan, Esq.**
FBN 0015527
N. Orange Ave., 16th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Telephone:  (407) 420-1414
Facsimile:  (407) 245-3401
Email:       rmorgan@forthepeople.com

**Paul M. Botros, Esq**.
FBN 0063365
8151 Peters Road
Suite 4000
Plantation, FL 33324
Telephone:  (954) 327-5352
Facsimile:  (954) 327-3017
Email:       pbotros@forthepeople.com

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on September 7, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which I understand will serve a copy on all counsel of record.

*/s/ Clif Alexander*
Clif Alexander