UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DODD BLANDON,

        Plaintiff,

v.                                       Case No.  6:19-cv-2420-WWB-GJK

WASTE PRO USA, INC.,

        Defendant.

_____

REPORT AND RECOMMENDATION

This cause came on for consideration, without oral argument, on the following motions:

| |
|---|
| **MOTION:**    **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW** (Doc. No. 166) <br><br> **FILED:**    **September 2, 2021** <br> _____ <br><br> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**. |

<table>
<tr><td><strong>MOTION:</strong></td><td><strong>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW (Doc. No. 172)</strong></td></tr>
<tr><td><strong>FILED:</strong></td><td><strong>September 7, 2021</strong></td></tr>
</table>

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

## I.   <u>BACKGROUND.</u>

Defendant provides commercial and residential waste disposal and recycling services to customers throughout the Southeastern United States. Doc. No. 1 at ¶ 38. From about September 24, 2012 through about March 11, 2017, Defendant employed Plaintiff as a "Waste Disposal Driver" working out of Defendant's facility in Brookhaven, Mississippi. *Id.* at ¶ 91.

On October 2, 2017, three Waste Disposal Drivers filed a collective action complaint in the District of South Carolina for FLSA violations against Defendant and other Waste Pro entities: Anthony Wright, Daniel Hansen, and Kenneth Privette v. Waste Pro USA, Inc., Waste Pro of Florida, Inc., Waste Pro of South Carolina, Inc., and Waste Pro of North Carolina, Inc., Case No. 2:17-cv-2654-DCN (the "South Carolina Action"). *Id.* at ¶ 4. On February 2, 2018, Plaintiff filed his consent to join the South Carolina Action. *Id.* at ¶ 5. On July 25, 2019, the court

dismissed Defendant and the Waste Disposal Drivers that worked outside of North Carolina and South Carolina from the South Carolina Action due to lack of personal jurisdiction. *Id.* at ¶ 10. On December 23, 2019, Plaintiff filed this collective action on behalf of himself and all similarly situated drivers who were paid a day rate and who timely filed consents to join in this case or the South Carolina Action. *Id.* at ¶¶ 10-11.

Plaintiff alleges that Waste Disposal Drivers were not paid time and a half for overtime because they were paid an improperly calculated day rate in violation of the Fair Labor Standards Act ("FLSA"). Doc. No. 1 at ¶¶ 31-33. Plaintiff also alleges that Defendant deducted thirty minutes for lunch, even when the Waste Disposal Drivers did not take a lunch break, and that the Waste Disposal Drivers were required to perform work before and after their shifts for which they were not compensated. *Id.* at ¶¶ 33-34. On September 30, 2020, the Court conditionally certified the following class: "All current and former Waste Disposal Drivers, who are or were employed by Defendant, Waste Pro USA, Inc., in every state except for Florida, South Carolina, and North Carolina, and who are or were paid on a job/day rate basis, during the preceding three years." Doc. No. 103 at 2.

Under the day rate pay method, Defendant's employees are paid a fixed amount for the day or task. Doc. No. 158-1 at 156. Because they are paid a day rate, they are not paid time and a half for overtime, but instead are paid what is referred to as a "half rate" for overtime. *Id.* The Drivers' compensation is thus calculated as follows:

- All amounts earned by a driver in a workweek were added together to determine the Workweek Earnings;
- The Workweek Earnings are divided by the number of hours worked in that workweek to determine the Regular Rate;
- Because the drivers (as day rate employees) have already been compensated for the first forty (40) hours through their Workweek Earnings, the Regular Rate is divided by two (2) to arrive at the Overtime Premium Rate;
- The Overtime Premium Rate is multiplied by the overtime hours to determine the Overtime Earnings;
- The driver's Workweek Earnings and Overtime Earnings are added together for the driver's Gross Earnings.

Doc. No. 166 at 2-3 (citing Doc. No. 158-1 at 156). In addition to the day rate and overtime, Defendant offered and paid bonuses, including an Annual Bonus and a Three-Year Safety Bonus. Doc. No. 158-1 at 37; Doc. No. 143-1 at 14. Defendant also allegedly placed limitations on the number of hours worked before the day rate was paid and as a result sometimes paid Drivers a half day rate. Doc. No. 42-8 at ¶¶ 3, 9.

4

On September 2, 2021, Defendant filed a motion for summary judgment ("Defendant's Motion"). Doc. No. 166. On September 7, 2021, Plaintiff filed a motion for partial summary judgment ("Plaintiff's Motion"). Doc. No. 172. On October 4, 2021, Plaintiff filed his response to Defendant's Motion ("Plaintiff's Response"). Doc. No. 183. On October 7, 2021, Defendant filed its response to Plaintiff's Motion ("Defendant's Response"). Doc. No. 188. On October 18, 2021, Defendant filed its reply to Plaintiff's Response ("Defendant's Reply"). Doc. No. 189. On October 21, 2021, Plaintiff filed his reply to Defendant's Response ("Plaintiff's Reply"). Doc. No. 191.

## II.   __THE MOTIONS.__

Defendant argues that it is entitled to summary judgment on Plaintiff's claim that Defendant failed to comply with the FLSA provisions regarding overtime because Defendant's payment of bonuses precluded Defendant from paying the half rate. Doc. No. 166 at 5-12. Defendant also argues that it is entitled to summary judgment on Plaintiff's claim that Defendant failed to comply with the FLSA provisions regarding overtime because Defendant did not pay the Drivers a true day rate, and instead paid a rate based on the number of hours worked. *Id.* at 12-19. Defendant moves for summary judgment as to certain Opt-In Plaintiffs that Defendant contends their claims are time-barred. *Id.* at 26.

Finally, Defendant moves for summary judgment on Plaintiff's off-the-clock and lunch deduction claims. *Id.* at 20-25. In his response to Defendant's motion to decertify the collective action, however, Plaintiff agrees to dismissal of the off-the-clock and lunch deduction claims without prejudice. Doc. No. 178 at 2-3. Thus, it is recommended that Defendant's Motion be denied as moot as to the off-the-clock and lunch deduction claims.

Plaintiff moves for summary judgment on three issues. Doc. No. 172. First, Plaintiff contends that it is entitled to summary judgment that Defendant violated the FLSA "because it failed to prove that the bonuses at issue are discretionary, and thus excluded from the overtime provisions of the FLSA." *Id.* at 8-17. Second, Plaintiff argues that it is entitled to summary judgment that Defendant willfully violated the FLSA against counsel's and the Department of Labor's advice. *Id.* at 17-22. Third, Plaintiff asks for summary judgment on Defendant's affirmative defense under the Motor Carrier Act, arguing that Defendant cannot prove that the defense is applicable to it. *Id.* at 22-32.

## III.   <u>STANDARD OF REVIEW.</u>

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Liberty Lobby, Inc.*, 477 U.S. at 257; *see* Fed. R. Civ. P. 56(c). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). In resolving a summary judgment motion, the Court must view the record evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"'Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed.'" *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)). Where cross motions reflect the parties' general agreement regarding the controlling legal

theories and material facts, they may be probative of the absence of a factual dispute. *Id.* at 1555-56.

## IV.   ANALYSIS.

### A. Bonuses

Defendant and Plaintiff both move for summary judgment on issues involving the bonuses paid to some Drivers. Doc. No. 166 at 5-12; Doc. No. 172 at 8-17. Defendant argues that it is entitled to summary judgment on Plaintiff's claim that Defendant failed to comply with the FLSA provisions regarding overtime because Defendant's payment of bonuses precluded Defendant from legally paying the half rate for overtime. Doc. No. 166 at 5-12. Plaintiff contends that he is entitled to summary judgment that Defendant violated the FLSA by miscalculating the regular rate because the bonuses Defendant paid should have been included in calculating the regular rate, which is then used to calculate the Drivers' overtime, and by not doing so Defendant violated the FLSA. Doc. No. 172 at 8-17.

The FLSA states that, except as otherwise provided,

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce . . . or is employed in an enterprise engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Time and a half overtime pay is the presumed amount to which workers are entitled as overtime pay. *Falken v. Glynn Cty., Ga.*, 197 F.3d 1341, 1345 (11th Cir. 1999).

A "regular rate" under the FLSA is "a rate per hour." 29 C.F.R. § 778.109. The FLSA "does not require employers to compensate employees on an hourly rate basis," and employees' "earnings may be determined on a piece-rate, salary, commission, or other basis, but in such case the overtime compensation due to employees must be computed on the basis of the hourly rate derived therefrom and, therefore, it is necessary to compute the regular hourly rate of such employees during each workweek . . . ." *Id.* An employee's regular hourly rate is determined by the employee's "total remuneration for employment . . . in any workweek" divided "by the total number of hours actually worked by him in that workweek for which such compensation was paid." *Id.* Sections of the Code of Federal Regulations "give some examples of the proper method of determining the regular rate of pay in particular instances." *Id.*

Section 778.112, which relates to "day rates and job rates," provides as follows:

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, *and if he receives no*

9

> *other form of compensation for services*, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

(Emphasis added.) Thus, day rate employees under section 778.112 receive only half of their hourly rate for hours worked in excess of forty during the workweek.

Defendant argues that Drivers are such day rate employees; Plaintiff argues that Drivers are not because they receive non-discretionary bonuses and thus receive "other form[s] of compensation for services." Doc. No. 166 at 6. This issue was decided adversely to Plaintiff in *Thomas v. Waste Pro USA, Inc.*, No. 8:17-CV-2254-CEH-CPT, 2019 WL 4751802, at *15-20 (M.D. Fla. Sept. 30, 2019), which proceeded in the Tampa Division of this Court.

In *Thomas*, employees that worked for Defendant as Helpers sued Defendant for violations of the overtime provisions of the FLSA by failing to pay the Helpers time and a half. *Id.* at *1. "Helpers are employees who load garbage, recycling, or other solid waste into a rear-load truck." *Id.* at *3. They were paid a day rate, but also received non-discretionary bonuses. *Id.* The Court found that § 778.112 "is only an example of how to calculate the regular rate when a worker is paid a day rate." *Id.* at *20. "Thus, the fact that Plaintiff and Helpers received

other compensation in the form of bonuses or for additional tasks does not mean they were not paid a day rate." *Id.* "Accordingly, payment of overtime to Plaintiff or Helpers at a half rate, instead of a time and a half rate, is permissible." *Id.* The Court specifically ruled that Defendant's "practice of paying bonuses and including them in the regular rate, for which Defendant paid half time as overtime, did not violate the FLSA." *Id.* at *23.

In Plaintiff's Response, Plaintiff asserts that it is not necessary for the Court to determine whether Plaintiff received other forms of compensation because Defendant's day rate compensation method is "invalid on other grounds." Doc. No. 183 at 10 n.8. Plaintiff does not distinguish *Thomas*, and the undersigned finds no basis for doing so. Thus, it is recommended that the Court find that Defendant's practice of paying a day rate and bonuses does not violate the FLSA.

Plaintiff does argue in Plaintiff's Motion, however, that Defendant violated the overtime provisions of the FLSA by failing to include the bonuses in the Drivers' regular rate of pay in determining the correct amount of overtime to pay the Drivers. Doc. No. 172 at 8-17. Plaintiff phrases this argument by stating it as Defendant's failure to prove that the bonuses are discretionary and therefore not included in the calculation of the regular rate, which is then used to determine overtime compensation. *Id.* at 1.

As evidence that Defendant was not including bonuses in the calculation of the regular rate and subsequently the overtime rate, Plaintiff cites to Calvin Hunt's Exemplar Paystubs for a 1-Year Period and emails from 2014 and 2015. Doc. No. 172 at 4; Doc. Nos. 172-9, 172-10, 172-12. Plaintiff also cites to the deposition of Shannon Early, Defendant's corporate representative. Doc. No. 172 at 5. Early testified that ADP, Defendant's payroll provider, was not directed to include the $10,000 safety bonus in the regular rate of pay. Doc. No. 158-1 at 66-68.

Plaintiff, however, does not cite to any evidence that (1) he or any of the Opt-In Plaintiffs received bonuses, or (2) that Plaintiff's or any of the Opt-In Plaintiffs' overtime wages were improperly calculated because bonuses they received were not included in calculating their regular rate. Doc. Nos. 172, 191. Calvin Hunt is no longer an Opt-In Plaintiff in this action. Doc. No. 136 at 1 ("Plaintiff's Notice of Withdrawal of Opt-Ins" including Hunt). Because Plaintiff fails to provide evidence that any miscalculation of the overtime rate occurred due to bonuses being awarded yet not included in the overtime rate compensation, whether the bonuses were discretionary or not is not a fact at issue, much less a material one.

Plaintiff counters Defendant's argument that he does not have standing to raise this issue because he never received a bonus by arguing that he has individual standing. Doc. No. 191 at 6-7. Plaintiff cites *Thomas v. Waste Pro USA, Inc.*, No. 8:17-CV-2254-T-36CPT, 2019 WL 4751802, at *21, and *Speer v. Cerner Corp.*, No. 14-0204-CV-W-FJG, 2016 WL 5395268, at *11 (W.D. Mo. Sept. 26, 2016), in support of this argument. Doc. No. 191 at 7. But in those cases the *defendants* moved for summary judgment to eliminate some opt-in plaintiffs that had allegedly not suffered damages or been subject to the complained-of pay practices. *Thomas*, No. 8:17-CV-2254-T-36CPT, 2019 WL 4751802, at *21; *Speer*, No. 14-0204-CV-W-FJG, 2016 WL 5395268, at *11. Here it is *Plaintiff* moving for summary judgment, and Plaintiff fails to meet his burden of establishing that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law that Defendant failed to prove that the bonuses were discretionary. As Plaintiff's inability to meet his burden is dispositive, the issues of whether the bonuses were discretionary and whether Plaintiff sufficiently pleaded his miscalculation claim on this theory are not addressed.

Plaintiff also asks that if the Court determines that he lacks standing to bring the miscalculation claims, then he be permitted "to amend his complaint to more clearly identify the complained of miscalculation claim and to include a

Named Plaintiff who received the complained of bonuses and suffered a miscalculation of his/her regular rate of pay as a result." Doc. No. 191 at 7 n.7. If Plaintiff seeks to amend his complaint, he should request such relief in a motion that complies with Local Rule 3.01, which provides Defendant an opportunity to respond to the request, not in a footnote in a reply to a response to a motion for partial summary judgment. *See also* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion.").

### B. Day Rates

Defendant also argues that it is entitled to summary judgment on Plaintiff's claim that Defendant failed to comply with the FLSA provisions regarding overtime because Defendant did not pay the Drivers a true day rate, and instead paid a rate based on the number of hours worked. Doc. No. 166 at 12-19. Plaintiff argues that Defendant did not pay a day rate because the rate Defendant paid Drivers "was only intended to cover a set number of hours." Doc. No. 183 at 7. Under 29 C.F.R. § 778.112, a day rate is not a true day rate if it is determined by a set number of hours.

The parties present conflicting evidence on this issue, precluding summary judgment. Plaintiff's argument rests primarily on Defendant paying a half-day rate if the Driver worked less than four hours and a full day rate if the Driver

14

worked four or more hours. Doc. No. 183 at 7. Plaintiff cites to, among other things, a 2014 email from Defendant's Director of Payroll and System Automation responding to a question asking how many hours a person must work to get paid a day rate. The Director responded, "Less than 4 hours = 1/2 Day 4 hours or more = 1 Full Day." Doc. No. 183 at 8. Plaintiff also points to testimony from Defendant's Regional Vice President for the Coastal Region, in which he confirms that an individual received one half day of pay for working 3.9 hours. *Id.* at 7 n.3.

Defendant argues that Plaintiff does not explain why an email from seven years ago or the Vice President's recollection of half day rates five or six years ago are relevant to whether there is a policy tying compensation to hours worked during the period of the claims in this action. Doc. No. 189 at 4-5.

Plaintiff cites to the following additional evidence that the day rate is tied to the number of hours worked:

- o His response to the request for admission admitting that he was paid a half day rate when he clocked in for 2.55 hours. Doc. No. 183 at 9 (citing Doc. No. 149-5 at 3).

- o Opt-In Plaintiff Melvin Bridges's explanation of the denial of the request to admit that he never received less than his full day rate because he did not receive his full day rate if he did not work more than four hours in a day and that management told him when he was hired that he had to work more than four hours in a day to receive the day rate. *Id.* (citing Doc. No. 149-9 at 4).

o Opt-In Plaintiff Tony Clausell's answers to admissions stating that he was not paid the full day rate if he worked less than four hours or if he was unable to drive four hours. Doc. No. 149-13 at 4.

o Opt-In Plaintiffs Robert Dodd and Barbara Ford stating in denying request for admission 1 that if they did not work four hours then they did not receive the full day rate. Doc. No. 149-25 at 4; Doc. No. 149-29 at 4.

o Opt-In Plaintiff Timothy Lewis stating that if he worked less than five hours then he did not receive a full day rate. Doc. No. 149-45 at 4.

o Opt-In Plaintiff Robert Nealy stating he did not receive the full day rate if he worked less than six hours. Doc. No. 149-51 at 4.

o Opt-In Plaintiff Alexzander Payton stating that he received half the day rate for working less than four hours. Doc. No. 149-55 at 4.

o Opt-In Plaintiff Kenneth Rounds stating that he was not paid the full day rate on occasion and that he noticed it happened more frequently when he did not have a truck to drive or his truck broke down. Doc. No. 149-60 at 4.

o Opt-In Plaintiff Manuel Smith stating that he worked less than four hours and received less than the full day rate. Doc. No. 149-65 at 4.

o Opt-In Plaintiff Marcus Swift stating that he was not paid a full day rate when his truck broke down and he was unable to complete his route, and then he was paid per hour. Doc. No. 149-71 at 4.

o Opt-In Plaintiff Danny D. Sykes stating that he was not paid a full day rate when he worked less than four hours due to Defendant's trucks breaking down. Doc. No. 149-72 at 4.

o Opt-In Plaintiff Alford Williams stating that he would not receive the full day rate if he worked less than four hours and would not

16

receive any compensation if he worked less than four hours. Doc. No. 149-81 at 4.

o   Opt-In Plaintiff Terrance Britt stating that he was not paid his full day rate and if the truck did not start running after three hours then he was sent home and not paid anything and would not receive the full day rate when the truck broke down mid-route. Doc. No. 149-150 at 4.

o   Opt-In Plaintiff Charles Martin stating that he would not receive his full day rate if he worked less than a certain number of hours. Doc. No. 149-169 at 4.

o   Opt-In Plaintiff Henry Pippins stating that he would not receive the full day rate if he worked less than four hours and when the truck broke down mid-route and he did not finish his route, then he would not receive the full day rate. Doc. No. 149-177 at 4.

o   Opt-In Plaintiff Kelly White stating, "Management told me I had to work more than four (4) hours to receive my full day rate." Doc. No. 149-182 at 4.

o   Plaintiff's testimony that he was told that he had to work at least three and a half hours to get the full day rate. Doc. No. 150-1 at 24.

o   Opt-In Plaintiff Melvin Bridges testifying that he was paid less than the full day rate for working less than four hours, contradicting the pay statement for that particular date, and that his supervisor told him that if he did not work for four hours then he would not get a full day's pay. Doc. No. 151-1 at 60-61.

o   Opt-In Plaintiff Jason Petrous testifying that he was told that a day rate was $150 per eight hours of work. Doc. No. 152-1 at 27-28.

o   Opt-In Plaintiff Reginald Patterson stating that he did not receive the full day rate at least five times and was never given an explanation why he received a half day rate three times and an hourly rate two times. Doc. No. 161-5 at 4.

17

    o  Opt-In Plaintiff Robert Sykes stating that there were at least twelve days that he did not receive the full day rate and his supervisor told him he would receive the half day rate if he worked less than four or six hours and he only worked less than six hours when the trucks broke down and he could not finish his routes. Doc. No. 161-8 at 4.

Plaintiff amply demonstrates that there is a genuine issue of material fact regarding whether the day rate was a true day rate or whether it was tied to a particular number of hours worked.

Defendant counters this evidence by arguing that the Drivers' understanding that the full day rate was to compensate them for an eight-hour workday is immaterial. Doc. No. 189 at 2. The Opt-In Plaintiffs did not simply state that this was their understanding; instead, they stated in their answers to interrogatories that this is what their supervisors told them. Doc. No. 149-9 at 4; Doc. No. 149-182 at 4; Doc. No. 150-1 at 24; Doc. No. 151-1 at 60-61; Doc. No. 152-1 at 27-28; Doc. No. 161-8 at 4. Because Defendant fails to demonstrate that there is no genuine issue of material fact regarding whether payment of full and half day rates depended on the number of hours worked, it is recommended that Defendant's request for summary judgment on this issue be denied. *See Thomas v. Waste Pro USA, Inc.*, No. 8:17-CV-2254-CEH-CPT, 2019 WL 4751802, at *20 (M.D. Fla. Sept. 30, 2019) (denying Defendant's request for summary judgment on the same issue "[b]ecause the evidence is conflicting with respect to whether

payment of the day rate for a daily task was tied to the number of hours worked .
. . .").

Defendant also argues that Plaintiff and the Opt-In Plaintiffs who were paid a full day rate and never paid half day rates have no standing as to the claim that payment of half day rates invalidates Defendant's day rate payment method.[1] Doc. No. 166 at 18-19; Doc. No. 189 at 5. Defendant asserts that "if the payment of the half day rate violated the FLSA, only the 6 Plaintiffs who received that form of payment suffered a concrete injury in fact." Doc. No. 166 at 19. Defendant argues that fixed payments equal to half the full day rate for certain tasks are not prohibited by the FLSA. Doc. No. 166 at 13-14. Defendant argues that all the fixed rates received in a workweek were included in the calculation of the regular rate. *Id.* at 14.

Plaintiff argues that Defendant's payment of the half rate is evidence that its day rate is tied to the number of hours worked, and thus evidence that some Opt-In Plaintiffs were paid a half rate is evidence that *all* Opt-In Plaintiffs were paid incorrectly. Doc. No. 183 at 13. This is because if the day rate was tied to the

---

[1] The Court in *Thomas* rejected this argument, finding that "this as a matter to be resolved when allocating damages." *Thomas v. Waste Pro USA, Inc.*, No. 8:17-CV-2254-CEH-CPT, 2019 WL 4751802, at *21. Defendant argues that *Thomas* is distinguishable because the Court in *Thomas* did not have the benefit of *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). In *TransUnion*, the Court held that plaintiffs must suffer a concrete injury from a statutory violation to have Article III standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. at 2214.

number of hours worked, then it was not a true day rate and all Opt-In Plaintiffs are entitled to overtime compensation of one and a half times their regular rate, not the half rate permitted if a true day rate was used. *Id.* at 14.

Because payment of the half day rate is evidence that the day rate was based on hours worked, it is not a standing issue. If the day rate was based on hours worked, then it may not be a true day rate entitling Defendant to pay half time for overtime, and Defendant's practice of paying half time for overtime would also therefore violate the FLSA. Because this evidence might invalidate the payment of half time for overtime, all Plaintiffs that were paid half time for overtime (instead of time and a half) were thus harmed and have standing to assert their claims against Defendant for violating the FLSA regarding payment of overtime.

Finally, Defendant argues that the instances of paying a half day rate were so infrequent that they do not invalidate its compensation method. Doc. No. 166 at 16-17. This argument ignores Plaintiff's evidence that not only were some paid a half day rate, but others were told by their supervisors that a certain number of hours was required to receive either the full or half day rate. Doc. No. 149-9 at 4; Doc. No. 149-182 at 4; Doc. No. 150-1 at 24; Doc. No. 151-1 at 60-61; Doc. No. 152-1 at 27-28; Doc. No. 161-8 at 4.

Defendant fails to demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law that using a half day rate does not invalidate its overtime compensation method.

### C. Time-Barred Claims

Defendant argues that the claims of the following Opt-In Plaintiffs are time barred: Renita Williams, Dennis Williams, Easter Irvin, Terry Clardy, and Lemarc Harper. Doc. No. 166 at 26. Of these, Plaintiff only addresses Renita Williams in Plaintiff's Response, Doc. No. 183 at 17, and agrees that Easter Irvin's, Terry Clardy's, and Lemarc Harper's claims are outside the statute of limitations, *id.* at 2 n.2. Terry Clardy's and Lemarc Harper's claims were withdrawn. Doc. No. 190. Thus, it is recommended that Defendant's Motion be granted as to Easter Irvin and Dennis Williams.

As to Renita Williams, she filed her consent in this case on March 10, 2020, Doc. No. 31, and her last pay period ended on February 11, 2017, Doc. No. 165-1 at ¶ 19. Thus, Renita Williams's consent was filed in this case more than three years after her last pay period.

Plaintiff does not dispute that this is beyond the statutory limitations period but argues that Renita Williams's claim was both statutorily and equitably tolled due to the South Carolina action. Doc. No. 183 at 17. Renita Williams filed

her consent in the South Carolina action on December 12, 2017, Doc. No. 183-8 at 3, which was within the limitations period.

Defendant argues that because Plaintiff did not seek tolling the limitations period via a motion, he cannot request such affirmative relief in Plaintiff's Response. Doc. No. 189 at 5-6. Defendant also contends that the Consents filed in the South Carolina action are insufficient to establish tolling the limitations period. *Id.* at 6. Defendant then asserts, "Even if the Consents alone are sufficient for statutory tolling, Blandon's argument is legally flawed." *Id.* But the only support for this argument is that Plaintiff fails to cite a decision holding that tolling is provided when the prior claim was dismissed for lack of personal jurisdiction. *Id.* at 7.

Under 29 U.S.C. § 256(b), an action is commenced in the case of an individual claimant for purposes of the FLSA's limitations period—if the written consent was not filed with the complaint or the claimant's name did not appear in the complaint—"on the subsequent date on which such written consent is filed in the court in which the action was commenced." Renita Williams's consent was first filed in the South Carolina action within three years of her last pay period. Doc. No. 183-8 at 3.

Defendant does not argue that this action was not commenced in South Carolina. Doc. Nos. 166, 189. Although Defendant argues that Plaintiff fails to cite a decision holding statutory tolling appropriate when the action was dismissed for lack of personal jurisdiction, Defendant fails to cite a decision holding that it is not. Doc. No. 189 at 6-7. Because Plaintiff submitted evidence that Renita Williams filed her consent in the South Carolina action within the limitations period, which Defendant does not dispute is "the court in which the action was commenced," Defendant fails to meet its burden of demonstrating that there is a genuine issue of material fact and it is entitled to judgment as a matter of law that her claim is time barred.

It is also of no moment that Plaintiff raises statutory tolling in Plaintiff's Response, and not in a motion. It is Defendant seeking the affirmative relief of a judgment in its favor on this issue, not Plaintiff. Finally, because Defendant is not entitled to a judgment that Renita Williams's claim is time barred based on statutory tolling, it is unnecessary to reach the issue of whether equitable tolling applies to the claim.

Regarding Dennis Williams, Defendant cites to his consent executed on November 30, 2020, and evidence that his last pay period was September 22, 2017. Doc. No. 166 at 26 (citing Doc. No. 112-1 at 9; Doc. No. 165-1 at ¶ 20). Thus,

his consent was filed more than three years after his last pay period and beyond the limitations period. 29 U.S.C. §§ 255(a), 256. Plaintiff does not address whether Dennis Williams's claim is time-barred. Doc. No. 172. Therefore, Defendant met its burden of establishing that it is entitled to summary judgment that Dennis Williams's claim is time barred.

### D. Willful Violations of FLSA

Plaintiff argues that he is entitled to summary judgment on Defendant's good faith defense under 29 U.S.C. § 260 because Defendant's alleged violations of the FLSA were willful and against the advice of Defendant's counsel. Doc. No. 172 at 1. If Defendant's alleged violations were willful, then liquidated damages are mandated and the three-year statute of limitations applies. 29 U.S.C. § 216(b); *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987) ("[L]iquidated damages are mandatory absent a showing of good faith."); 29 U.S.C. § 255(a).

Plaintiff points to evidence that Defendant's counsel and the Department of Labor advised Defendant that certain bonuses must be included in the regular rate of pay. Doc. No. 172 at 18. Plaintiff then cites deposition testimony from Defendant's Director of Payroll and System Automation that certain bonuses were never included in the regular rate. *Id.* at 20 (citing Doc. No. 143 at 1, 11). Plaintiff argues that Defendant had no reasonable grounds to believe that

excluding certain bonuses from the regular rate of pay was legal under the FLSA. *Id.* at 21.

Defendant responds that if the bonuses issue fails as a matter of law, then the Court does not reach the willfulness argument. Doc. No. 188 at 17. This ignores Plaintiff's still-viable argument that Defendant willfully violated the FLSA by not including the bonuses in the calculation for overtime pay. Doc. No. 172 at 17-21.

As discussed above, Plaintiff did not present evidence that he or any of the Opt-In Plaintiffs received bonuses in the first instance. Plaintiff fails to demonstrate that there are no genuine issues of material fact that Defendant did not include the bonuses in the calculation of the regular rate of pay. And Defendant points to evidence that its Director of Payroll and System Automation instructed its payroll company to include the Annual Bonus in the regular rate calculation after the Department of Labor conducted its audit. Doc. No. 188 at 18 (citing Doc. No. 158-1 at 180-81). Defendant asserts that the Department of Labor did not make findings regarding all of the different bonuses Defendant paid. *Id.* at 18.

Because there is a genuine issue of material fact regarding whether Defendant violated the FLSA in the first instance, Plaintiff fails to meet his

burden of demonstrating that there are no issues of material fact and that he is entitled to judgment as a matter of law that Defendant acted willfully in doing so.

### E. Motor Carrier Act Affirmative Defense

Plaintiff requests a judgment as a matter of law that Defendant is not exempt from the FLSA's overtime provisions under the Motor Carrier Act ("MCA") exemption. Doc. No. 172 at 22-32. Plaintiff further limits this request to a "summary judgment on Defendant's affirmative defense that the MCA exemption applies to Waste Disposal Drivers who transported recyclable materials *intrastate*." *Id.* at 2 n.1 (emphasis in original). Plaintiff, however, fails to identify any such "Waste Disposal Drivers who transported recyclable materials intrastate." *Id.* at 4-5, 22-32. Defendant, on the other hand, identifies Opt-In Plaintiffs that engaged in interstate travel as often as every shift, every workday, two to three times a day, three times a week, or four times a week. Doc. No. 188 at 5. Plaintiff states that "Defendant provided no evidence that the MCA exemption could apply to the remaining *178* Plaintiffs in this matter." Doc. No. 191 at 3 n.2 (emphasis in original). Plaintiff provides no citation to support the assertion that there are 178 Drivers that did not cross state lines. *Id.*

This issue is raised in Plaintiff's Motion. Doc. No. 172 at 22-32. Plaintiff bears the burden of first identifying grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Assuming that Plaintiff met this burden by simply asserting that there are Drivers that transported recyclable materials intrastate, then the burden shifted to Defendant to present affirmative evidence to show that a genuine issue of material fact exists. *Liberty Lobby, Inc.*, 477 U.S. at 257; *see* Fed. R. Civ. P. 56(c). Defendant met its burden by citing to record evidence demonstrating that there were Opt-In Plaintiffs that did cross state lines. Doc. No. 188 at 5. Plaintiff failed to counter this with any citations to evidence that there were Opt-In Plaintiffs that only traveled intrastate, much less ones that transported recyclable materials intrastate. Doc. No. 191. Thus, Plaintiff fails to demonstrate that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law that the CMA exemption does not apply to Opt-In Plaintiffs who transported recyclable materials intrastate, as Plaintiff fails to present evidence that such Opt-In Plaintiffs exist.

V.   **CONCLUSION.**

Accordingly, it is **RECOMMENDED** as follows:

1. That Defendant's Motion be **GRANTED IN PART AND DENIED IN PART** as follows:

   a. That the Court find that Defendant's practice of paying bonuses does not result in Defendant violating the FLSA by paying overtime at the half rate;

   b. That the Court find that Opt-In Plaintiffs Easter Irvin's and Dennis Williams's claims are time-barred;

   c. That Defendant's Motion be **DENIED AS MOOT** as to Plaintiff's off-the-clock and lunch time claims and whether the claims of Terry Clardy and Lemarc Harper are time-barred;

   d. That in all other respects, Defendant's Motion be **DENIED**; and

2. That Plaintiff's Motion be **DENIED**.

## NOTICE TO PARTIES

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to serve written objections waives that party's right to challenge on appeal any

28

unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida, on December 15, 2021.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record
Unrepresented Parties