UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DODD BLANDON,

**Plaintiff,**

v.                                                          Case No.  **6:19-cv-2420-WWB-GJK**

WASTE PRO USA, INC.,

**Defendant.**

_____

REPORT AND RECOMMENDATION

This cause came on for consideration, without oral argument, on the

following motion:

| | |
|---|---|
| **MOTION:** | **DEFENDANT'S MOTION TO DECERTIFY COLLECTIVE ACTION AND INCORPORATED MEMORANDUM OF LAW (Doc. No. 170)** |
| **FILED:** | **September 3, 2021** |
| | _____ |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**. | |

## I.     BACKGROUND.

Defendant provides commercial and residential waste disposal and recycling services to customers throughout the Southeastern United States. Doc. No. 1 at ¶ 38. From about September 24, 2012 through about March 11, 2017, Defendant employed Plaintiff as a "Waste Disposal Driver" working out of Defendant's facility in Brookhaven, Mississippi. *Id.* at ¶ 91.

On October 2, 2017, three Waste Disposal Drivers filed a collective action complaint in the District of South Carolina for FLSA violations against Defendant and other Waste Pro entities: Anthony Wright, Daniel Hansen, and Kenneth Privette v. Waste Pro USA, Inc., Waste Pro of Florida, Inc., Waste Pro of South Carolina, Inc., and Waste Pro of North Carolina, Inc., Case No. 2:17-cv-2654-DCN (the "SCA"). *Id.* at ¶ 4. On February 2, 2018, Plaintiff filed his consent to join the SCA. *Id.* at ¶ 5. On July 25, 2019, the court dismissed Defendant and the Waste Disposal Drivers that worked outside of North Carolina and South Carolina from the SCA due to lack of personal jurisdiction. *Id.* at ¶ 10. On December 23, 2019, Plaintiff filed this collective action on behalf of himself and all similarly situated drivers who were paid a day rate and who timely filed consents to join in this case or the SCA. *Id.* at ¶¶ 10-11.

Plaintiff alleges that Defendant's Waste Disposal Drivers ("Drivers") were not paid time and a half for overtime because they were paid an improperly calculated day rate in violation of the Fair Labor Standards Act ("FLSA"). Doc. No. 1 at ¶¶ 31-33. Plaintiff also alleges that Defendant deducted thirty minutes for lunch, even when the Waste Disposal Drivers did not take a lunch break, and that the Waste Disposal Drivers were required to perform work before and after their shifts for which they were not compensated. *Id.* at ¶¶ 33-34. Plaintiff's final argument regarding overtime pay is that it was miscalculated due to Defendant not including particular bonuses in the regular rate of pay. Doc. No. 178 at 13. On September 30, 2020, the Court conditionally certified the following class: "All current and former Waste Disposal Drivers, who are or were employed by Defendant, Waste Pro USA, Inc., in every state except for Florida, South Carolina, and North Carolina, and who are or were paid on a job/day rate basis, during the preceding three years." Doc. No. 103 at 2.

Under the day rate pay method, Defendant's employees are paid a fixed amount for the day or task. Doc. No. 158-1 at 156. Because they are paid a day rate, they are not paid time and a half for overtime, but instead are paid what is referred to as a "half rate" for overtime. *Id.* The Drivers' compensation is thus calculated as follows:

- All amounts earned by a driver in a workweek were added together to determine the Workweek Earnings;
- The Workweek Earnings are divided by the number of hours worked in that workweek to determine the Regular Rate;
- Because the drivers (as day rate employees) have already been compensated for the first forty (40) hours through their Workweek Earnings, the Regular Rate is divided by two (2) to arrive at the Overtime Premium Rate;
- The Overtime Premium Rate is multiplied by the overtime hours to determine the Overtime Earnings;
- The driver's Workweek Earnings and Overtime Earnings are added together for the driver's Gross Earnings.

Doc. No. 166 at 2-3 (citing Doc. No. 158-1 at 156). In addition to the day rate and

overtime, Defendant offered and paid bonuses, including an Annual Bonus and a

Safety Bonus. Doc. No. 158-1 at 37; Doc. No. 143-1 at 14; Doc. No. 159-1 at 28-29.

Defendant also allegedly placed limits on the number of hours worked before the

day rate was paid and as a result sometimes paid Drivers a half day rate. Doc.

No. 42-8 at ¶¶ 3, 9. Some Drivers received other forms of compensation, such as

cell phone allowances. Doc. No. 159-1 at 28.

On September 3, 2021, Defendant filed a motion to decertify the collective

action (the "Motion"). Doc. No. 170. On September 22, 2021, Plaintiff filed his

response to the Motion (the "Response"). On October 4, 2021, Defendant filed its

reply to the Response (the "Reply"). Doc. No. 181.

After the Motion was filed, on September 7, 2021, the claims of 114 Opt-In

Plaintiffs were withdrawn. Doc. No. 171. On October 26, 2021, an order

dismissing these Opt-In Plaintiffs was entered. Doc. No. 192. On October 21, 2021, Plaintiff withdrew the consents of Terry Clardy and Lemarc Harper. Doc. No. 190. Clardy and Harper were not included in the order dismissing the withdrawn plaintiffs. Doc. No. 192. Thus, 116 Opt-In Plaintiffs have withdrawn. In the Motion, Defendant represents that there are 212 Plaintiffs. Doc. No. 170 at 13. Deducting the withdrawn Opt-In Plaintiffs from 212 results in 96 Plaintiffs remaining in this case.

## II.   MOTION FOR DECERTIFICATION.

### A.   Legal Standard

There is a two-step procedure for whether a FLSA collective action should be certified: 1) the notice stage, and 2) the decertification stage. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008). The notice stage is when "a district court determines whether other similarly situated employees should be notified." *Id.* At the decertification stage, because it typically follows discovery, the court can "make a more informed factual determination of similarity . . . and the plaintiff bears a heavier burden." *Id.* at 1261. The more legally significant differences that exist among the opt-in plaintiffs, the "less likely it is that the group of employees is similarly situated." *Id.* The Motion falls under the decertification stage.

At the decertification stage, the court should consider the following factors: "'(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations[.]'" *Id.* (quoting *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007)). The similarities must include not just job duties and pay provisions, but also, to some extent, the defenses. *Id.* at 1261-62. "[T]he district court must consider whether the defenses that apply to the opt-in plaintiffs' claims are similar to one another or whether they vary significantly." *Id.* at 1262. The ultimate question is "whether the plaintiff employees are similarly situated to one another." *Id.*

**B.    Analysis**

In the Response, "Plaintiff concedes that partial decertification is appropriate, only, as to the off-the-clock claims and the lunch deduction claims of Plaintiff and the Opt-in Plaintiffs who have joined this matter . . . ." Doc. No. 178 at 1. Plaintiff asks the Court to dismiss these claims without prejudice and allow those Opt-In Plaintiffs sixty days following dismissal to refile their claims. *Id.* at 2-3. Plaintiff then asserts that instead of decertifying this action, the Court should create three subclasses. *Id.* at 3. Plaintiff proposes the following three subclasses:

> 1. Plaintiffs who received a $10,000 safety bonus and/or an annual safety bonus within the applicable statute of limitations;
> 2. Plaintiffs who received other forms of compensation in addition to their day rate within the applicable statute of limitations; and
> 3. Plaintiffs who received a "half-day rate" within the applicable statute of limitations.

*Id.* at 3 (footnote omitted). Within the first subclass, Plaintiff states that he would be willing to create two subclasses. *Id.* at 3 n.2. Plaintiff thus identifies six subclasses within this action.

As discussed above, 96 Plaintiffs remain in this action. Doc. No. 170 at 13; Doc. Nos. 190, 192. In the Response, Plaintiff does not identify which or how many Opt-In Plaintiffs would be in each proposed subclass or whether some Opt-In Plaintiffs would be in multiple subclasses. Doc. No. 178.

Rather than advocating for the class Plaintiff brought, Plaintiff seemingly pivots to advocating a substantially different series of subclasses , which are not characterized with any level of specificity as to which Opt-In Plaintiffs qualify for which subclasses, resulting in a tacit admission that certification is no longer appropriate. *See generally Amador v. Baca*, No. 2:10-CV-01649-SVW-JEM, 2016 WL 6804910, at *2 n.2 (C.D. Cal. July 27, 2016) (finding that in responding to whether a class action should be decertified, "Plaintiffs immediately pivot to a discussion of proposed revisions to the Rule 23(c)(4) class, in a tacit admission that the

current class definition is not appropriate."). Plaintiff frames his argument against decertification by arguing under the first factor that each of his proposed three subclasses that would remain in this action should not be decertified. Doc. No. 178 at 13-22. Plaintiff then address the second and third factors. *Id.* at 22-28.

        1.    <u>Individual Plaintiffs' Disparate Factual and Employment Settings.</u>

The first factor the court considers in reviewing a motion to decertify an FLSA collective class is the plaintiffs' disparate factual and employment settings. *Morgan*, 551 F.3d at 1261. Plaintiff's concession to dismissing two subclasses and creating three additional subclasses and decision to address the first factor by discussing each of his proposed three subclasses indicate that the Opt-In Plaintiffs are not similarly situated to each other. Doc. No. 178 at 13-22.

Plaintiff's proposed subclasses necessarily indicate different compensation methods: (1) payment of bonuses; (2) payment of other forms of compensation; and (3) payment of a half day rate. *Id.* at 3. Different compensation methods are disparate factual and employment settings when the basis of the claims against Defendant are that the compensation methods violate the FLSA.

In *Thomas v. Waste Pro USA, Inc.*, No. 8:17-CV-2254-CEH-CPT, Doc. No. 393 (M.D. Fla. July 6, 2020), which proceeded in the Tampa Division of this Court, the Court granted Defendant's motion for decertification. In *Thomas*,

employees that worked for Defendant as Helpers sued Defendant for violations

of the overtime provisions of the FLSA by failing to pay the Helpers time and a

half. *Thomas v. Waste Pro USA, Inc.*, No. 8:17-CV-2254-CEH-CPT, 2019 WL

4751802, at *1 (M.D. Fla. Sept. 30, 2019). "Helpers are employees who load

garbage, recycling, or other solid waste into a rear-load truck." *Id.* at *3. They

were paid a day rate, but also received non-discretionary bonuses. *Id.* The

certified class consisted of those "employed by WP USA or WP Florida, since

September 28, 2014 and w[ere] paid via the date rate method for at least one

workweek during the relevant time period and worked at a location that had a

policy or practice to pay a half-day rate or non-discretionary bonuses." No. 8:17-

CV-2254-CEH-CPT, Doc. No. 393 at 2.

The Court in *Thomas* found that the Helpers had disparate factual and

employment settings because they worked at different locations "under different

decision-makers who implemented policies differently." *Id.* at 7. The evidence

showed that if there was a policy regarding payment of less than the day rate,

various locations did not follow it. *Id.* at 7-8. The case required a "case-by-case

examination across the different locations." *Id.* at 8. "[B]ecause of the different

locations and pay practices, there are various Opt-In Plaintiffs who may not have

been subject to the relevant policy[,]" as some Opt-In Plaintiffs were

compensated by the hour. *Id.* There was also evidence that some Opt-In Plaintiffs were paid half the day rate because they requested light duty tasks as accommodations. *Id.* "Under such circumstances, payment of a half-day rate is not comparable to instances of decreased pay based on hours worked." *Id.*

Defendant presents the same evidence here regarding the Drivers. Doc. No. 170. The Opt-In Plaintiffs include: "All current and former Waste Disposal Drivers, who are or were employed by Defendant, Waste Pro USA, Inc., in every state except for Florida, South Carolina, and North Carolina, and who are or were paid on a job/day rate basis, during the preceding three years." Doc. No. 103 at 2. There is no limitation as to the type of driver, of which there are at least seven types. Doc. No. 170 at 6. Different types of drivers were paid differently. *Id.* at 7 (citing Doc. No. 158-1 at 151-53). An attachment to Defendant's corporate representative's deposition is a chart setting forth how different drivers in different divisions were paid differently. Doc. No. 158-1 at 151-54. At two divisions in Louisiana, all Drivers were paid hourly, and at a third Louisiana division, the Drivers were switched to being paid hourly in December 2019. *Id.* at 153. Three different divisions in Georgia paid different Drivers differently, with the Athens site paying roll off and front-end loader Drivers day rates until January 2021, when they were switched to hourly, and in August 2021, switching

all other types of Drivers from day or task rate to hourly. *Id.* at 151. At the Atlanta and Atlanta West divisions, however, the roll off and front-end loader Drivers were switched from day rates to hourly rates in October 2020, and excluding two residential Drivers, all residential Drivers were hourly until May 2021, when all other Drivers were changed to hourly. *Id.*  Plaintiff argues that these job duty differences are legally immaterial, Doc. No. 178 at 11, but this is unpersuasive as the different jobs correspond to different compensation methods. In *Morgan*, 551 F.3d at 1261-62, upon which Plaintiff relies for this argument, Doc. No. 178 at 11, the Eleventh Circuit stated that the FLSA does not require class members to hold identical positions, but the similarities must be more than job duties and pay provisions. Here, Plaintiff has not even demonstrated similar pay provisions.

The Divisional Vice Presidents or Regional Vice Presidents, along with division managers, determine how to pay Defendant's employees. Doc. No. 170 at 9 (citing declarations of the Regional Vice Presidents for Waste Pro of Mississippi, Inc., in Southern Mississippi, and the Divisional Vice President for Waste Pro of Louisiana, Inc.). During the relevant period, there were at least 49 different supervisors and managers who had authority to set compensation policies. *Id.*

11

The Drivers also received different types of compensation that were labelled bonuses. Doc. No. 170 at 17-19. Defendant points to cell phone allowances characterized as bonuses given to collective members in Baton Rouge, bonuses related to an ice storm in Jackson, Mississippi given to three Opt-In Plaintiffs, sign-on and referral bonuses, and bonuses for finishing contracts that were winding down or travelling to a different location. *Id.* at 17-18. Plaintiff argues that the different types of other compensation are "immaterial because each would be 'other pay' besides a day rate." Doc. No. 178 at 17-18. Plaintiff also argues that Defendant provided limited examples of other compensation that a jury can easily determine whether the examples result in Defendant's payment of overtime violating the FLSA. *Id.* at 18. Thus, Plaintiff is asking the jury to determine whether numerous other types of compensation that some of the Opt-In Plaintiffs received invalidate Defendant's calculation of overtime. Plaintiff provides no evidence demonstrating that most of the Opt-In Plaintiffs received a certain type of other compensation.

Plaintiff argues that each of his proposed subclasses should not be decertified. Doc. No. 178 at 13-19. But the argument does not address the disparities among the Opt-In Plaintiffs regarding how they were paid and who decided how they were paid. Plaintiff argues that, regarding his first proposed

subclass, the only individualized determination that matters is whether they received the Annual Bonus or a Safety Bonus within the applicable statute of limitations. Doc. No. 178 at 14-15. Plaintiff argues that *Thomas* should not be followed because this issue was not present in the *Thomas* case. Doc. No. 178 at 22. Plaintiff contends that the decision to not include the Annual Bonus and Safety Bonus in calculating the regular rate to determine the amount of overtime was a single, corporate, company-wide decision that alone precludes decertification. *Id.* But Plaintiff fails to demonstrate that he or any Opt-In Plaintiff received the Safety Bonus or Annual Bonus, thus failing to show that this alleged single, corporate, company-wide decision is material. Plaintiff does not show that this issue countenances against following *Thomas*. Instead, there seems to be no valid reason to depart from *Thomas*.

2.   Defenses That Appear to be Individual to Each Plaintiff.

The second factor the courts consider when determining whether an FLSA class should be decertified is the defenses available to the defendants. *Morgan*, 551 F.3d at 1261. "[T]he district court must consider whether the defenses that apply to the opt-in plaintiffs' claims are similar to one another or whether they vary significantly." *Id.* at 1262.

In support of this factor favoring decertification, Defendant points out that it will be relying on the Motor Carrier Act Exemption, which requires transportation in interstate commerce. Doc. No. 170 at 24. Defendant points to 32 Opt-In Plaintiffs that said that they drove routes that crossed state lines and that individualized inquiries will need to be made to determine the extent of interstate travel. *Id.* at 26. Plaintiff concedes there are differences here when he states in the Response that "Defendant has organized Plaintiffs into tidy groupings such that a jury would not have to make an individual by individual basis as much as make a small number of decisions which would be applied to many collective members en masse." Doc. No. 178 at 23. If Plaintiff's argument is accepted, then this proposed small number of decisions the jury would have to make would also need to be added to the jury's decisions regarding whether each different form of compensation rendered the Defendant's overtime payments violative of the FLSA.

Defendant also relies on the Opt-In Plaintiffs that never worked overtime or worked a *de minimis* amount, which would require the jury to make individualized determinations as to whether Defendant is liable to them. Doc. No. 170 at 28-29. Plaintiff argues that the Supreme Court rejected the argument that decertification is warranted because not all class members have damages

and cites to *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 460-61 (2016), for support. In *Tyson Foods*, the defendant argued that if the plaintiffs cannot prove that all class members are injured, then the plaintiffs must demonstrate a mechanism to identify the uninjured class members before judgment and ensure that those class members do not contribute to the size of the damages and cannot recover such damages. *Id.* at 460. The Court rejected this argument as premature because the damages awarded had not been disbursed and there was no indication of how it would be disbursed. *Id.* at 461.

*Tyson Foods* is inapposite. The defendant in *Tyson Foods* did not argue that decertification was warranted because the jury would need to make individualized determinations regarding whether some class members worked overtime, as Defendant is arguing here. Plaintiff states that "[t]he Supreme Court specifically stated, '[t]hat not all plaintiffs may be entitled to the same amount of damages, *or to any damages at all*, does not compel decertification of a collective action.'" Doc. No. 178 at 25 (emphasis in Plaintiff's quotation). This quotation, however, is not in the *Tyson Foods* case.

In *Thomas*, the Court found that this factor favors decertification. *Thomas v. Waste Pro USA, Inc.*, No. 8:17-CV-2254-CEH-CPT, Doc. No. 393 at 10-11. The defenses of the Motor Carrier Act Exemption and whether some Helpers worked

any or *de minimis* overtime hours relate to liability, not simply damages, and required a factual inquiry as to each Helper. *Id.* Plaintiff presents no convincing reason to deviate from *Thomas*.

> 3.      Fairness and Procedural Considerations.

The final factor the courts consider in reviewing a motion for decertification of a FLSA class is fairness and procedural considerations. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d at 1261. Determining whether the claims can "be tried fairly as a collective action also requires looking to the purposes of § 216(b) actions under the FLSA: (1) reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issues of law and fact that arise from the same illegal conduct." *Id.* at 1264.

Plaintiff does not specify how many Opt-In Plaintiffs would be in each subclass that Plaintiff proposes. Without this information, it cannot be determined whether the subclasses would "'reduc[e] the burden on plaintiffs by allowing for the pooling of resources and efficiently resolv[e] common issues of law and fact that arise from the same conduct.'" Doc. No. 178 at 6 (quoting *Rodriguez v. Niagara Cleaning Servs., Inc.*, 2010 WL 11505505, fn. 4 (S.D. Fla. Dec. 14, 2010)). If there are only a few Opt-In Plaintiffs in a subclass, for example, that would serve neither purpose.

Plaintiff also fails to demonstrate how considerations of fairness dictate trying this case as a collective action. Not just in regard to Defendant, but also as to an Opt-In Plaintiff that did work overtime and did not cross state lines having his or her claim tried along with an Opt-In Plaintiff that did not work overtime or did cross state lines.

As discussed above, there are not sufficient common issues of law and fact that arise from the same alleged illegal conduct. In finding that this factor weighed in favor of decertification, the Court in *Thomas* stated the following:

> For reasons previously discussed in this Order, there are substantial factual differences between the Opt-In Plaintiffs that would render proceeding as a collective both unmanageable and unfair. Doing so would create a burden on this Court and on the parties because too many individual inquiries would be required. The benefits of proceeding as a collective—to reduce the burden on the plaintiffs and efficiently resolve common issues of law and fact that arise from the same conduct—simply cannot be realized in this case. Instead, the Court would be required to have numerous subclasses, individualized evidence and liability determinations, and individualized damages determinations. Under such circumstances, decertification is warranted.

*Thomas*, No. 8:17-CV-2254-CEH-CPT, Doc. No. 393 at 11-12.

## C.    Recommendation

The factors weigh in favor of decertification. The Opt-In Plaintiffs have disparate factual backgrounds, and Plaintiff fails to point to a consistent payment

method. The defenses raised require individualized inquiries regarding, at the least, whether particular Opt-In Plaintiffs crossed state lines or even worked more than a *de minimis* amount of overtime. Finally, fairness and procedural considerations weigh in favor of decertification due to the numerous differences among the Opt-In Plaintiffs and the payment methods. Therefore, it is recommended that this collective action be decertified. Because it is recommended that the entire action be decertified, Plaintiff's request that the off-the-clock claims and the lunch deduction claims be dismissed without prejudice and that those Opt-In Plaintiffs be given sixty days to refile them is not addressed.

## III.   CONCLUSION.

Accordingly, it is **RECOMMENDED** that the Motion (Doc. No. 170) be **GRANTED,** the collective be decertified, and that the Opt-In Plaintiffs' claims be dismissed without prejudice.

### NOTICE TO PARTIES

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to serve written objections waives that party's right to challenge on appeal any

unobjected-to factual finding or legal conclusion the district judge adopts from

the Report and Recommendation. 11th Cir. R. 3-1.

      **RECOMMENDED** in Orlando, Florida, on December 21, 2021.


_____

GREGORY J. KELLY

UNITED STATES MAGISTRATE JUDGE


Copies to:

Counsel of Record